**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT A

A-1 through A-5

FILED USDC FLND PN
SEP 1 '26 AM10:37

**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
BUILDING 601 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

February 4, 2026
DCSA-M 25-12821

Mr. John M. Zedaker
189 Indigo Loop
Miramar Beach, FL 32550

Dear Mr. Zedaker:

This is in response to your Freedom of Information/Privacy Act (FOI/PA) request dated July 31, 2025, wherein you requested all adjudication records under the Defense Counterintelligence and Security Agency (DCSA) between the dates of January 1, 2023, to July 31, 2025; to include security clearance status and level. The DCSA Freedom of Information/Privacy (FOI/P) Office for Adjudications and Vetting received your request on August 6, 2025. We conducted a search for records pertaining to you.

Our search identified the attached records responsive to your request. We reviewed the documents in accordance with the Privacy Act of 1974, as amended, and the Freedom of Information Act (FOIA). Our review included consideration of the FOIA foreseeable harm standard. Under this standard, the content of a particular record should be reviewed, and a determination made as to whether the agency reasonably foresees that disclosing it would harm an interest protected by one of the FOIA exemptions.

The records contain third party information which we have withheld pursuant to Privacy Act exemption (k)(2) and FOIA exemptions (b)(6) and (b)(7)(C). Privacy Act exemption (k)(2) protects investigatory and vetting material compiled for non-criminal law enforcement purposes that, if released, might interfere with a civil or administrative action, or investigation, and result in the unwarranted invasion of personal privacy of others. FOIA exemptions (b)(6) and (b)(7)(C) protect the disclosure of the information that could reasonably be expected to cause an unwarranted invasion of privacy of the individual(s) involved.

A Memorandum for Record included in our response to you, cites an attachment which was not included as part of the file upload to the Defense Information System for Security (DISS) and thus, not included in our response to you.

You have the right to appeal this response by submitting a request to the FOIA Appellate Authority via e-mail at dcsa.quantico.hq.mbx.foia@mail.mil, or in writing to the Defense Counterintelligence and Security Agency, ATTN: FOIA Appellate Authority, P.O. Box 618, 1137 Branchton Rd, Boyers, PA 16018. If mailing your appeal, clearly mark the outside of the envelope and your written appeal letter: "*Privacy/FOIA Appeal*". DCSA must receive appeals within ninety (90) calendar days from the date of this letter. Your written appeal letter should include the reasons for releasing the requested information and why this action may be in

error. Include with your appeal letter a copy of your original request and this response letter. Please reference tracking number DCSA-M 25-12821.

You also may seek dispute resolution services from the FOIA Public Liaison via e-mail at dcsa.quantico.hq.mbx.foia@mail.mil, or by calling (878) 274-4411. Alternatively, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation. You may contact OGIS in any of the following ways or refer to their website: https://www.archives.gov/ogis.

| | |
|---|---|
| U.S. National Archives and Records Administration | Phone: 202-741-5770 |
| Office of Government Information Services | Toll-Free: 1-877-684-6448 |
| 8601 Adelphi Road – OGIS | Fax: 202-741-5769 |
| College Park, MD 20740-6001 | Email: ogis@nara.gov |

DCSA conducts background investigations and determines eligibility in accordance with the Office of the Director of National Intelligence (ODNI) Security Executive Agent Directive (SEAD) 4 "National Security Adjudicative Guidelines". Executive Order 12968, DoDM 5200.02, and DoDD 5220.6 govern the adjudicative process for individuals employed by the Department of Defense (DoD).

The Defense Information System for Security (DISS) lists your current clearance status as *Loss of Jurisdiction*, as of October 30, 2025, because at the time, DCSA Adjudication and Vetting Services (AVS) lost authority to review/adjudicate your records upon your separation from employment.

DCSA AVS is authorized to render security clearance eligibility determinations only on behalf of applicants and/or employees for whom their employment position requires eligibility for access to classified information and/or assignment to sensitive duties. Should you secure future employment in a position requiring a security eligibility determination, the Department of Defense (DoD) affiliated employer is responsible for initiating a new investigation to support the level of clearance required of the employment position. Individuals cannot request a reconsideration or eligibility determination, on themselves. DCSA AVS can only receive a reconsideration request from an authorized DoD SMO/SSO.

We hope this information is helpful and appreciate the opportunity to assist you in this matter.

Sincerely,

F Powell — Digitally signed by F Powell Date: 2026.02.04 14:47:09 -05'00'

for/
Joy F. Greene
Supervisory, Government Information Specialist
FOI/P Office for Adjudications and Vetting

Attachments:
As stated



PRIVACY ACT INFORMATION
In compliance with the Privacy Act of 1974, this information is Personal Data and must be protected from public disclosure

A-2

16 May 2024

**MEMORANDUM FOR RECORD**

**From:** [redacted] IAS Lead CPSO, Sierra Nevada Corporation

**Subject:** John Zedaker Involuntary Termination

On 17 April 2024, John Zedaker (Subject) sent [redacted] a Teams message discussing his intent to debrief [redacted] due to Subject's perceived understanding of [redacted] role and his strict interpretation of the program CONOPS. Refer to [redacted] statement (**OA_05152024_signed**). Subject indicated he will request to be debriefed if [redacted] decided against his guidance to debrief [redacted] this is the first instance the subject mentioned requesting to be personally debriefed. [redacted] did not concur with Subject's guidance to debrief [redacted] citing continued program-support role and need maintain access.

On 23 April, Subject sent an email to [redacted] and courtesy copied his leader, [redacted] The contents of the email indicated Subject's decision to step down as the Program Manager (PM) and Chief Engineer (CE) of an effort known as Hall Monitor. Refer to Subject's statement (**Program_Debrief_MFR_Zedaker_signed and** [redacted] **Statement Addendum**). At approximately 1029 hours on 23 April 2024, [redacted] responded to Subject's email stating he [redacted] does not concur with the subject's decision to step down as PM and CE. Please refer to [redacted] statement ([redacted] **Statement_signed**).

On 25 April 2024, at approximately 0800, Subject and [redacted] met to discuss some concerns the subject was having with requesting to be debriefed. [redacted] provided guidance to Subject that personally requesting to be debriefed is not the norm as typically it is the PM or the individual's leader that would request a debrief; alternately, someone resigning from a company would justify a debrief. [redacted] asked Subject if he intended to resign from the company; Subject stated "no". [redacted] offered to investigate the matter and provide Subject with the implications of requesting to be debriefed, but also advised Subject at that time that requesting to be debriefed is a reportable to the PSO and is treated in a similar manner as refusing to sign a SAPIA.

On 29 April 2024, [redacted] notified Program Security of odd hours the subject has been working and noted that Subject cleared out his office space and retrieved all personal belongings. Please refer to [redacted] statement [redacted] **Statement_signed**). Upon further investigation, it was determined the subject entered the SCIF over the weekend, 27 – 28 April 2024 when the subject was not scheduled to work. This off-hour access was not coordinated with the CSSO/CPSO as required by the RMC SCIF SOP/EAP. This access occurred following an abbreviated Friday workday and just prior to the Monday start of a sudden (not coordinated with Subject's leadership) 2-week paid time off (PTO). [redacted] were notified of the access and actions to clear out personal belongings, and [redacted] disabled the subject's access to the SCIF for the remainder of the PTO. At end of PTO, access was reinstated, but was limited due to expected debrief.

On 10 May 2024, Subject notified [redacted] he was requesting to be debriefed from access. [redacted] notified [redacted] (Human Resources) and [redacted] of the subject's intent to be debriefed on 13 May 2024. After discussing the situation and recent Subject actions with [redacted] it was determined

that [redacted] would schedule a debrief with the subject at 0730 on 13 May 2024; the decision was made to also terminate employment at that time due to **Failure to Meet Job Eligibility Requirements**.

On Saturday 11 May 2024, Subject again accessed the SCIF during non-working hours without coordination with CSSO/CPSO. Subject had previously notified [redacted] that he intended to prepare pass down items over the weekend but did not indicate how he intended to accomplish that.

[redacted] RMC ISSM, conducted a review of the subject's information system activities within the SCIF for the period of 26 April 2024 through 3 May 2024. The review indicated normal activity with zero items printed. Subject's DevWan account was disabled on 3 May 2024. Please refer to the Splunk report attached (**Splunk Report Attachment 1**).

On 13 May 2024, following Subject's debrief and termination, [redacted] notified OSI PJ [redacted] OSI PJ [redacted] advised [redacted] to debrief the subject "**for cause**" in JADE. OSI PJ [redacted] cited requesting debrief is a refusal to continue activities on Special Access Programs and is reportable as adverse information based on the adjudicative guidelines. Additionally, OSI PJ [redacted] cited the categorization of the subject's termination of employment provides justification to debrief "**for cause**". The subject's termination categorization is as follows: **Failure to Meet Job Eligibility Requirements**. Lastly, OSI PJ [redacted] provided guidance, due to SEAD 3, an adverse report must be made in DISS. [redacted] has initiated contact with FSO [redacted] to submit an adverse report in the subject's DISS profile.

On 14 May 2024, [redacted] received a call from USG Security Customer [redacted] from OSI PJ Headquarters. [redacted] was notified from [redacted] (Meat) of the Hall Monitor USG customer office pertaining to the subject's dismissal from SNC. After discussing the matter involving the subject, [redacted] concurred with OSI PJ [redacted] guidance to debrief the subject for cause and to submit an adverse report in DISS. At approximately 1400 on 14 May 2024, [redacted] OSI PJ PSO overseeing the Hall Monitor effort contacted [redacted] pertaining to his discussions with [redacted] concurred with the guidance [redacted] and [redacted] provided.

Please direct any questions and/or concerns to me at [redacted]@sncorp.com or [redacted]

[redacted]

Security Manager II
Sierra Nevada Corporation

About CATS | Case Details × | **Subject Details** ×

## JOHN M. ZEDAKER

| | | | |
|---|---|---|---|
| SSN: | [redacted] | DoD EDI PN: | [redacted] |
| DOB: | | Eligibility Level: | None |
| Place Of Birth: | | Eligibility Determination: | Loss Of Jurisdiction made on 2025-10-30 by DoD CAS |
| Exception Code: | None | Open Investigation: | No |
| Supporting Investigation: | None | NDA Signed Date: | 2004/12/13 |
| Incident Report: | | | |

Subject Actions

Basic Info. | Other Subject Details | SMO Relationships | **Incidents** | Accesses | CSRs/RFAs | Subject Notes/Documents | Foreign Travel

A-5

### Incidents (1)

| Status | Date | Type(s) | Self Reported | Submitting SMO | Uploaded by: | Phone | Email Address | Expand |
|---|---|---|---|---|---|---|---|---|
| Adjudication Completed | 2024/05/13 | Personal Conduct | No | 4EXW5-SNC Colorado-1 | (b) (6), (b) (7)(C), (k)(2) | | @sncorp.com | |

Incident Reported Date: 2024/05/13

Access Debriefed: No

**Incident Notes (1)**

- Zedaker was briefed to a special access program and disagreed with leadership regarding management of the program. Zedaker then requested to be debriefed from program access. AF Customer categorized this debrief as adverse due to the facts surrounding the debrief requests and directed SNC to submit an adverse report via DISS. See attached original Memorandum for Action submitted to AF regarding this situation.

**Incident Documents (1)**

| Name | Type | Notes | View |
|---|---|---|---|
| Personal Conduct Report | Other | Personal Conduct Report | |

(1) (Attachments)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT B

B-1 (1 page)

Outlook

## DCSA Records Amendment Request - Zedaker

**From** John Zedaker <zedakerj@gmail.com>
**Date** Thu 2/5/2026 11:00 AM
**To** dcsa.quantico.dcsa-hq.mbx.foia@mail.mil <dcsa.quantico.dcsa-hq.mbx.foia@mail.mil>

30 attachments (21 MB)

Record_Amendment_Request_Zedaker_signed.pdf; ATT00001.htm; DCSA_FOIA_Response_3p.pdf; ATT00002.htm; DCSA_SNC_MFR_Breakdown_Zedaker.pdf; ATT00003.htm; TW_Teams_Messages_1.pdf; ATT00004.htm; Parker_Teams_Messages_4.pdf; ATT00005.htm; Parker_Teams_Messages_3.pdf; ATT00006.htm; Parker_Teams_Messages_2.pdf; ATT00007.htm; Parker_Teams_Messages_1.pdf; ATT00008.htm; Tim_Woods_Text_51122024_1.pdf; ATT00009.htm; Tim_Woods_Text_51122024_2.pdf; ATT00010.htm; Aug_Memory_Dump_signed.pdf; ATT00011.htm; TIM_CE_PM_Email_Thread.pdf; ATT00012.htm; Retaliation_Indication_Response.pdf; ATT00013.htm; IG_emails.pdf; ATT00014.htm; Post_Firing_Email_Thread.pdf; ATT00015.htm;

Good morning,

I would like to submit a request for amendment of my JADE and PSP records.

I contend that they contain falsehoods and inaccurately reflect my debrief from a SAP while working for Sierra Nevada Corporation on 13 May 2024.

In support of this request I have attached:

-Signed DCSA Form 335
-The relevant incident record notations and SNC MFR that was recently obtained from DCSA via a FOIA request
-A detailed description of the various elements of that SNC MFR in particular that were false and/or significant misrepresentations of events. Also discussion of various notable information related to that debrief that SNC completely omitted from their MFR despite them be required to provide the reasons when someone requests to debrief from a SAP.
-Various TEAMS messages, emails, and text messages that support my assertion that SNC wrongfully reported and/or failed to report information to DCSA related to that debrief and this was transparently done to minimize the risk of losing the SAP after I, as the program manager and person who had ultimate responsibility for the SAP, refused to go along with wrong-doing that an SNC Senior Vice President was directing SAP personnel to do.

Thank you for your time.

V/R

John



B-1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT C

C-1 through C-2

| **FREEDOM OF INFORMATION / PRIVACY ACT REQUEST FOR ADJUDICATION AND VETTING RECORDS** | *OMB No. 0704-0561 OMB approval expires March 31, 2026* |
|---|---|

The public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden tothe Department of Defense, Washington Headquarters Services, at whs.mc-alex.esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person should be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**PRIVACY ACT STATEMENT**

**Authorities:** 5 U.S.C. 552, 5 U.S.C. 552a, 32 CFR part 310, 32 CFR part 286.
**Principal Purpose(s):** The purpose of the collection is to enable the Defense Counterintelligence and Security Agency (DCSA) to locate applicable records and to respond to requests made under the Freedom of Information Act and the Privacy Act of 1974, as amended.
**Routine Use(s):** The information collected on this form will primarily be used to comply with requests for information under 5 U.S.C. 552 and 5 U.S.C. 552a. The information requested may be used by and disclosed to DCSA personnel, contractors, and/or shared externally with other government agencies as a routine use when necessary and relevant to assist in activities related to the processing of your Freedom of Information Act and/or Privacy Act request. Additionally, DCSA may use the information as necessary and authorized by the routine uses in the system of records notice associated with this form: DoD-0008, Freedom of Information Act Privacy Act Records. A complete list of the routine uses and the full text of DoD-0008 can be found at: https://www.federalregister.gov/documents/2021/12/22/2021-22710/privacy-act-of-1974-system-of-records.
**Disclosure:** Information Regarding Disclosure of your Social Security Number (SSN) under Public Law 93-579, Section 7 (b). Solicitation of SSNs by DCSA is authorized under the provisions of Executive Order 9397, dated November 22, 1943. Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, DCSA may be unable to locate records pertaining to you. The use of SSNs is necessary because of the large number of Federal employees, contractors, civilians, and military personnel who have identical names and/or birth date and whose identities can only be distinguished by their SSNs.

**INSTRUCTIONS**

Use of this form is optional. To request a copy of your adjudicative records, please complete the appropriate fields below (or send a written request, containing the below information) to our Fort Meade, MD, office location. The information you provide will be used to identify/retrieve records pertaining to your request. Your completed form or written request may be submitted via mail or by secure e-mail as a scanned attachment. If submitting via e-mail, you should ensure that the security of your e-mail system is adequate for transmitting sensitive information before choosing to transmit your request, which contains your personally identifiable information. See page 2 for our contact information.

**1. TYPE OF REQUEST – SELECT ALL THAT APPLY. (THIS SECTION MUST BE COMPLETED)**

[ ] I am making a request for my Security Clearance Status/Level. (Requester must complete sections 2, 4, 5, and 6)

[ ] Privacy Act/FOIA Request – I request my own records under the Privacy Act of 1974. (Requester must complete sections 2, 3, 4, 5, and 6)

[ ] FOIA Request – I am making a request for records about someone or something other than myself. (Requester must complete sections 2, 3, and 7a/b.)

[X] Privacy Act Amendment Request – I wish to amend my own records. In accordance with 32 C.F.R.§ 310.7, include an explanation why the record is not accurate, timely, relevant, or complete without this correction. Provide factual documentation that supports the request for the amendment. Requestors should attach additional material to this form. (Requestor must complete sections 2, 4, 5, and 6)

Note: If requesting your Background Investigation or a copy of your SF86, visit https://www.dcsa.mil/Contact-Us/Privacy-Civil-Liberties-FOIA/Requesting-Background-Investigation-Records/

**2. REQUESTER'S INFORMATION**

| FULL NAME | | |
|---|---|---|
| John Zedaker | | |
| STREET ADDRESS: 189 Indigo Loop | | |
| CITY: Miramar Beach | STATE: FL | ZIP CODE: 32550 |
| COUNTRY: USA | | TELEPHONE (*Optional*): 360-632-0640 |

PREFERRED DELIVERY METHOD

[X] SECURE E-MAIL* zedakerj@gmail.com

[ ] HARDCOPY MAIL

*A secure e-mail ensures that the information being sent to you is encrypted and therefore cannot be intercepted and read.



C-1

**3. RECORDS REQUESTED** (Specify the specific records you are seeking. Attach a separate page if you need more space than provided below.)

-Requesting correction of JADE record and PSP related to my 13 May 2024 debrief from a SAP while working for Sierra Nevada Corporation, to reflect that I was not "debriefed for cause" all adverse information removed.

-The current record is not accurate and the statements provided by Sierra Nevada Corporation to SAPCO, DCSA, etc. contained numerous falsehoods, misrepresentations, and omissions.

-Separate documents included with this request contains info to support this statement

**4. REQUESTER'S IDENTIFYING INFORMATION (complete this section only if you are making a request for records about yourself.)**

| SOCIAL SECURITY NUMBER | DATE OF BIRTH | STATE OF BIRTH |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

| CITY OF BIRTH | COUNTRY OF BIRTH |
|---|---|
| [redacted] | USA |

**5. AUTHORIZATION TO RELEASE INFORMATION TO THIRD PARTY** *(optional)*

By completing this section, you authorize information relating to you to be released to another person, such as a family member or legal counsel. Please note, if you choose to have your records sent to a third party, you will not be furnished a duplicate copy. Pursuant to 5 U.S.C. § 552a(b), I authorize the DCSA - Defense Counterintelligence and Security Agency - to release my records (defined above) to:

NAME OF THIRD PARTY

THIRD PARTY MAILING ADDRESS

**6. VERIFICATION OF REQUESTER'S IDENTITY** (Complete this section only if you are making a request for records about yourself.)

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and I am the person named in Section 2. I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. § 1001 by a fine of not more than $10,000, or by imprisonment for not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. § 552a(i)(3) by a fine of not more than $5,000.

| REQUESTER'S HANDWRITTEN SIGNATURE OR CAC/PIV E-SIGNATURE | DATE |
|---|---|
| [signature] | 2/5/2026 |

**7a. COMPLETE THIS SECTION ONLY IF YOU ARE REQUESTING RECORDS ABOUT SOMEONE OR SOMETHING OTHER THAN YOURSELF**

In the box below, you may wish to provide information about yourself and the purpose of your request to help us determine your fee category. While FOIA does not require a requester to state the purpose of a request, fees may be reduced based on the nature of the requester or purpose of the request. Fees for searching, copying, and processing records in this category may be levied in accordance with DCSA's regulations at 32 C.F.R.286.12. If you are asking for a waiver or reduction of fees, you can also use this box to provide an explanation. Attach a separate page if you need more space than provided below.

**7b.**

- [x] I agree to pay all applicable fees.
- [ ] I agree to pay up to a specific amount for fees. Specify the amount ________
- [ ] I request a waiver or reduction of fees because I am (check all options below that apply)
  - [ ] Affiliated with an education or noncommercial scientific institution and this request is not for commercial use
  - [ ] A representative of the news media and this request is part of a news dissemination function and not for commercial use
  - [ ] Requesting the information in order to contribute significantly to the public understanding of operations or activities of the government and I do not primarily have a commercial interest in the information.

**CONTACT INFORMATION**

Defense Counterintelligence and Security Agency
Attn: FOI and Privacy Office for Adjudications and Vetting
601 10th Street
Fort Meade, MD 20755-5131

E-mail: dcsa.meade.dcsa.mbx.privacy-act@mail.mil

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT D

D-1 through D-23

**From:** John Zedaker
**To:** Tim Woods
**Subject:** FW: Pena - Move
**Date:** Monday, April 22, 2024 5:32:46 PM

*John Zedaker*
303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)

**SNC Internal Information (Non-Proprietary)**

**From:** John Zedaker
**Sent:** Monday, April 22, 2024 8:20 AM
**To:** 'Brian Beam (Brian.Beam@sncorp.com)' <Brian.Beam@sncorp.com>
**Cc:** Deena Hartell <Deena.Hartell@sncorp.com>; Parker Francis <Parker.Francis@sncorp.com>
**Subject:** Pena - Move

Brian,

Personnel updates including the Pena change were passed to the customer last week. For Pena his new role is not something that can be done under current access given the CONOPS and specific customer guidance within it. He will need to be moved over to the same access that Sam Hancock / Turk has which will still allow him to execute his new role. This may need to be explained to Dominic however.

John

*John Zedaker*
Operations Analysis Lead
Sierra Nevada Corporation
303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com | sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)

SNC SIERRA NEVADA CORPORATION

BEST MANAGED COMPANIES

**SNC Internal Information (Non-Proprietary)**

**SNC Internal Information (Non-Proprietary)**

D-1

B1

**From:** Tim Woods
**To:** John Zedaker
**Cc:** Deena Hartell; Anthony Roscio; Parker Francis
**Subject:** Re: CE/PM
**Date:** Tuesday, April 23, 2024 10:28:52 AM

All - I do not concur with this action

Need to get back into their mtg.

Will discuss later

Tim

Sent from my iPhone

On Apr 23, 2024, at 8:49 AM, John Zedaker <John.Zedaker@sncorp.com> wrote:

After discussing with Tim I will be stepping down as both CE and PM. There should be guidance on who will fill those roles in future prior to the next VTC on 4/30.

Thanks for your and your teams help over the last 6 months getting things off the ground and executing all the things necessary to have a successful PMR event. Much appreciated.

jz

*John Zedaker*
Operations Analysis Lead
Sierra Nevada Corporation
303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com | sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)
<image001.jpg>

**SNC Internal Information (Non-Proprietary)**

**From:** Tim Woods
**To:** John Zedaker
**Subject:** Re: CE/PM
**Date:** Tuesday, April 23, 2024 10:28:41 AM

John

You are misreading the situation.

You are the CE and PM for HM. I am not concurring with your unilateral decision to step down. You took actions without consulting with me and we will work through it.

I am on the road this week and would appreciate it if you would not take additional steps toward solving this in you mind unilaterally. I believe I can be fair and open to conversation. You owe me that much pls.

I need to get back into this mtg but will call you later.

V/R

Tim

Sent from my iPhone

> On Apr 23, 2024, at 5:11 AM, John Zedaker <John.Zedaker@sncorp.com> wrote:
>
>
>
> Tim,
>
> Thank you for the direction and guidance yesterday.
>
> I have appreciated the chance to fill the CE and PM leadership role, take on the challenging task of rebuilding a customer relationship and confidence level, and lead the design and execution of work that resulted in a successful PMR in a very short timeframe. I am proud of the work that I did there but no longer feel that I am the best person for the CE/PM positions.
>
> I have revisited the CONOPS and remain confident in the guidance I gave to the leadership team down here related to Pena and Piko. Neither should remain accessed given their new roles. The fact that security, having the most SNC familiarity with the CONOPS along with myself, also independently reached that same conclusion gives me additional confidence. I also have significant experience in understanding and adhering to the precision of language of DoD guidance documents and do not feel any lack of experience there is impacting me. Finally, all of my interactions with the customer have indicated to me that they take that language seriously, expect me to adhere to it both personally and in a CE/PM leadership role, and they do not consider it optional, particularly as an industry entity.
>
> I respect and support your decision to override decisions made on both accounts and don't take it personally. However, that does make clear to our internal leadership team, SNC program members, and to the customer that I do not indeed have the confidence or authority to act as CE/PM on the program.
>
> I do respectfully disagree that there is a development action here for me. I feel that my actions in program leadership and in attempting to improve alignment with the CONOPS were positive and beneficial to SNC long term objectives. I also can't help but note that the 2 people who seem most judgmental of my actions were the PM and CE before me, and neither the customer relationship or program work execution were in good shape under their leadership.

>
> I will need to communicate my stepping down from these roles to Deena, Parker, and Anthony given our daily program leadership interactions and the responsibilities the CE/PM has to them. I will NOT make any communications of this change to the customer and will leave that to you or the new CE/PM. The next customer VTC which the PM position leads is next Tuesday.
>
> V/R
>
> John

**From:** John Zedaker
**To:** Tim Woods
**Subject:** Re: Housekeeping / Pena
**Date:** Monday, April 22, 2024 10:20:42 PM

---

I did at the next time I had a conversation with you but in the meantime made decisions and provided guidance to the team in alignment with the responsibilities of CE/PM.

It's obvious that those decisions are being called into question. That is fine, I am very comfortable with all decisions made, and proud of the work that both security and I have done over last few months to get personnel and the billets in better alignment with the CONOPS and stated customer expectations.

I would prefer being removed from those positions given that my interpretations of the CONOPS and customer statements is not consistent with desires. The person holding those titles needs to be the one able to say to the customer that they have responsibility and authority to ensure compliance with their guidance.

> On Apr 22, 2024, at 9:40 PM, Tim Woods <Tim.Woods@sncorp.com> wrote:
>
> Thanks for the notes/SA John.
>
> Looks like you had the intent of sharing those actions with me at least:)
>
> Again, not looking to create issues, more about working together toward one goal.
>
> Would like to sit down and review the conops with you when I get back and understand where you see issues we may need to resolve.
> Would also absolutley love to have you at Dom's brief on the roadmaps on Friday.
>
> Thanks sir - sent the updated goals to you after the call. If you want to clarify or change anything, let's work that too.
>
> V/R
>
> Tim
>
> Sent from my iPhone
>
>> On Apr 22, 2024, at 5:39 PM, John Zedaker <John.Zedaker@sncorp.com> wrote:

Begin forwarded message:

**From:** John Zedaker <John.Zedaker@sncorp.com>
**Date:** April 11, 2024 at 8:25:46 AM MDT
**To:** Deena Hartell <Deena.Hartell@sncorp.com>
**Cc:** Parker Francis <Parker.Francis@sncorp.com>, Anthony Roscio <Anthony.Roscio@sncorp.com>
**Subject: RE: Housekeeping / Pena**

Deena,

Thanks for allowing me some time to read the CONOP again and make sure I understood the language correctly.

I agree that Sheryl will need to be debriefed. Please debrief at your convenience. I will communicate this to Tim.

Same for Dominic. Please debrief at your convenience as well. However for him he will need to be put in for the program that Turk / Carrie Hanson / etc. are in order to execute his new role.

For the SCI, I'm not sure how that works so I would support whatever your judgement is there. I did not see that as specifically called out in the CONOPS and am not sure if they are given to allocate as SNC sees fit or if there are similar requirements to the other aspects.

Thanks.

John

*John Zedaker*

303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)

**SNC Internal Information (Non-Proprietary)**

**From:** John Zedaker <John.Zedaker@sncorp.com>
**Sent:** Wednesday, April 10, 2024 10:55 AM
**To:** Deena Hartell <Deena.Hartell@sncorp.com>

**Cc:** Parker Francis <Parker.Francis@sncorp.com>; Anthony Roscio <Anthony.Roscio@sncorp.com>
**Subject:** Re: Housekeeping / Pena

Deena,

I'll read the CONOP to get up to speed on that element. I think Tim does not want to debrief Sheryl and views her similarly to others in those billets who are... mildly active and don't participate frequently and have no title but could be useful in future.

For any needed action there I'd want to inform Tim prior to so I'll get up to speed on it and circle back.

John

> On Apr 10, 2024, at 10:36 AM, Deena Hartell <Deena.Hartell@sncorp.com> wrote:
>
> Hi John
>
> Thank you for the feedback on the changes to your team and the changing roles and responsibilities. IAW the CONOP and your assumption of both PM/Tech Lead role, Ms Sheryl Piko will also need to be debriefed and access to the VLANs disabled.
>
> John/Parker – Correct me if I am wrong but that is the right approach considering the realignment of the project.
>
> Both Sheryl and Dominic are also sponsored for SCI under AB therefore, that will have to be moved under the appropriate project they will be supporting.
>
> Please provide a timeline for actions necessary so, we don't impact any transition plans as they move on.
>
> Thank you

Deena
**SNC Internal Information (Non-Proprietary)**

**From:** John Zedaker
<John.Zedaker@sncorp.com>
**Sent:** Wednesday, April 10, 2024 8:42 AM
**To:** Deena Hartell
<Deena.Hartell@sncorp.com>; Parker Francis
<Parker.Francis@sncorp.com>; Anthony Roscio
<Anthony.Roscio@sncorp.com>
**Subject:** Housekeeping / Pena

Deena/Parker/Anthony,

Apologies to Anthony as I started to take action here on Monday only to be given the need to pause until some things played out and I was not able to speak in detail on things going on.

Dominic is going to be moving into a different role at SNC. He will still be in the same billet for a while but I anticipate that he may eventually move to another.

In the meantime I no longer need him to have access to the CAVE or to HMLAN or ABLAN. Please make these adjustments.

Separately I am now executing the roles of both PM and CE for the HM. Sheryl is focusing on some other responsibilities that she has recently taken on. I don't think this changes much but if there is anything I have a responsibility to either of your teams for please let me know and I will ensure that I do so.

I don't anticipate keeping both titles forever and there is discussion on a couple of options to go back to two people in the roles.

Thanks,

John

*John Zedaker*

D-8

E4

Operations Analysis Lead
Sierra Nevada Corporation
303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com | sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)
<image001.jpg>

**SNC Internal Information (Non-Proprietary)**

**John Zedaker**

| | |
|---|---|
| **From:** | John Zedaker |
| **Sent:** | Sunday, May 12, 2024 10:00 AM |
| **To:** | Parker Francis; Tim Woods |
| **Cc:** | Deena Hartell; BangOne Angerman |
| **Subject:** | RE: Paperwork |
| **Attachments:** | Program_Debrief_MFR_Zedaker_signed.pdf |

I went in to the office yesterday to work the passdown material for Justin but saw that I no longer had the accesses necessary to do so. When asking around to figure out why this would be I learned that the debrief was being characterized in a manner that is completely false.

This is very unfortunate and I would have liked to think that my work and the professional manner in which I tried to address and resolve this issue would have warranted another course of action. I respectfully request that the attached MFR and the three classified documents listed within it be maintained in the program spaces for the foreseeable future. I would also respectfully request an HR investigation into the allegations made against me, my response and attempt to resolve, and how this debrief is now being framed.

I will be in the security office at 0730 to debrief as scheduled.

V/R

John

*John Zedaker*
303.706.6418 (o)
720.960.3629 (m)
john.zedaker@sncorp.com
john.m.zedaker.ctr@mail.smil.mil (SIPR)

**From:** John Zedaker John.Zedaker@sncorp.com
**Sent:** Friday, May 10, 2024 8:31 PM
**To:** Parker Francis Parker.Francis@sncorp.com
**Subject:** Re: Paperwork

I can make the 0730 no problem. I get the impression Tim is already aware of the push forward, but I want to make sure I don't get accused of doing anything without communicating. He was aware of the afternoon readout, can you please make sure he is aware of the push forward if he isn't already. I will take care of the pass down items for Justin over the weekend so that it is still done with the earlier readout.

Thanks.

John

---

**SNC Internal Information (Non-Proprietary)**

-----Original Appointment-----
**From:** Parker Francis <Parker.Francis@sncorp.com>
**Sent:** Friday, May 10, 2024 11:54 AM

**To:** John Zedaker
**Subject:** Declined: Paperwork
**When:** Monday, May 13, 2024 3:00 PM-3:30 PM (UTC-07:00) Mountain Time (US & Canada).
**Where:** SCIF Security Office

Hey John, I'm moving the meeting to 0730. My day is getting filled up and we are shorthanded.

Let me know if the new time works. I will be sending you an invite.

V/R
Parker
**SNC Internal Information (Non-Proprietary)**

---

**From:** John Zedaker
**Sent:** Friday, May 10, 2024 12:26:01 PM
**To:** Parker Francis <Parker.Francis@sncorp.com>
**Subject:** Canceled: Paperwork
**When:** Monday, May 13, 2024 2:00 PM-2:30 PM.
**Where:** SCIF Security Office

Parker,

I will be back this day and would like to read out of program with you at this time (If it works better with your schedule to pull forward to 2pm, I'm good with that too). I will spend morning going over some stuff with Justin. Additionally not all my initial SAPIAs were with you, I had some directly with customer so not sure how debrief will need to be coordinated. I anticipate I'll sign the SAPIA I signed originally with you and then maybe a second blank one to send to customer. I am not communicating anything to customer and will leave that to you, Tim, and my replacement.

As discussed before I left, there should be no negative connotation to the debrief. If there is I would like to discuss but I don't see how there could be. Debriefing due to no longer being aligned with the program should not be anything negative.

Thanks.

John

**SNC Internal Information (Non-Proprietary)**



D-11

F2

12 May 2024

From: John Zedaker, Sierra Nevada Corporation

To: Tim Woods, Deena Hartell, Parker Francis, Any Others That This Info May Concern

Subject: Memorandum for the Record of Recent Activities Related to Zedaker Program Debrief

I recently scheduled a program debrief after being unable to reach a resolution with my leadership on an element that impacted program work. Details of the point of conflict are available elsewhere but the most notable elements related to the debrief are:

(1) Sometime around 4/10/2024 actions were taken by me in my roles as PM/CE related to billets and my interpretation of the CONOPS in discussion with program security
(2) Sometime around 4/20/2024 conversations were initiated with my leadership, Tim Woods, regarding how that decision was overridden by him without even talking to me and the impact that this had on my ability to successfully execute the PM/CE roles, and honestly represent myself as having that authority, responsibility, and accountability to the customer.
(3) Between 4/20/2024 and 4/26/2024 multiple conversations occurred between myself and senior leadership regarding my inability to maintain serving effectively in the PM/CE positions given the actions taken. I offered and requested multiple times to be replaced as PM/CE on the program but was denied each time.
(4) On 4/25/2024 I had a conversation with security to confirm that anyone on a program could request a debrief for reasons as generic as "no longer being aligned with the program" and not have it be a negative on the person debriefing or the company. Given that I was making no progress in being removed from the PM/CE roles which would have allowed me to still execute work on the program but not be forced to falsely represent anything to the customer, debriefing appeared my only option for resolution. I also had no intentions of a contentious debrief despite being fully confident and proud of all of my program actions, and feeling as though I had false allegations made against me, by people who had access to the CONOPS and could have used it to lay out why I was wrong, but never did.
(5) After starting to plan to debrief on 4/29/2024 (day before a recurring customer VTC), on 4/26/2024 I instead decided to take 2 weeks of PTO, at some personal expense, in hopes that the additional time would allow leadership to better understand that staying in the PM/CE roles while still maintaining my integrity and responsibilities to customer was not possible following the actions taken.
(6) Between 4/26/2024 and 5/9/2024 multiple additional conversations occurred with leadership trying to reach resolution.
(7) On 5/8/2024 it became apparent that there would be no resolution to the core issue and I reached out to security to schedule a debrief for 3pm on 5/13/2024. This was the day prior to the next customer VTC meaning I would not have to falsely represent myself there and it also allowed nearly a full day to do a passdown with junior OA personnel to prepare them for success on the program after my debrief.
(8) On 5/10/2024 I received notification from security that the debrief time needed to be 0730 on 5/13/2024. I accepted this request, requested that they make sure leadership was aware

of the change if not already, and indicated I would come in on the weekend to prepare the passdown material for the junior analyst.

(9) Upon arriving to the SCIF on Saturday 5/11/2024 I realized that much of my access to IT and physical areas had been removed. As such I was not able to execute the passdown work. In asking around regarding why this would have occurred I learned that my upcoming debrief was being characterized, both internally and externally, as a debrief that was requested by leadership due to inappropriate program actions on my part.

This is completely false and not supported by any facts. The fact that most easily contradicts this characterization is that I was still being actively encouraged to remain not just on the program, but in the two most senior leadership positions on the program as recently as 5/9/2024. Debriefing from the program was at my request due to a desire to not be forced to falsely represent myself to the customer, in an attempt to be a responsible DoD professional, and was not the result of any inappropriate program actions. Falsely characterizing otherwise has a significant impact on my career and warrants a full investigation.

Given the contention on recent actions and the debriefing, and in support of investigations into the actions here, I respectfully request that the following classified materials be maintained for the foreseeable future:

(1) The printed and highlighted CONOPS currently in the topmost used drawer in the SCIF Room 405 safe. This is the CONOPS I used, referenced often in my leadership role to try to improve or maintain compliance, and highlighted notable language in.
(2) The printed and highlighted Addendum document currently in the topmost drawer in the SCIF Room 405 safe. This DoD guidance document was also used heavily as reference and highlighted with notable language.
(3) The 3-page, handwritten, addendum to MFR document that is currently in topmost drawer in the SCIF Room 405 safe. This details all billet related actions taken during my time in a leadership role for 15 relevant personnel (including Piko/Pena), the DoD guidance language relevant to each personnel action, a summary of why each action was compliant and necessary given the language of the DoD guidance, and how all such actions were communicated to the customer.
(4) This signed MFR document.

The first three documents are all in the same manila folder within the safe drawer.

Regardless of this unfortunate end to program work, I appreciate the chance to work with each of you and on the program in general to do good things for SNC and the customer. I intend to still do good work while off the program but can not accept any mischaracterization of my debrief or the actions leading to it given the impact they would have on my ability to do future similar work. I have a long history of doing such work in support of national security, believe I am fairly effective at it, execute the work with integrity and due diligence, and would like to continue to do so.

V/R

John Zedaker

**From:** John Zedaker
**To:** Tim Woods
**Subject:** Re: CE/PM
**Date:** Thursday, May 9, 2024 10:50:13 AM

Tim,

I'm disappointed with a lot of things here as well. To the extent that you feel this was due to me or my actions, then I apologize. However I have overly communicated in recent emails how I feel the characterizations of my actions were wrong, provided detailed evidence of why, and really have received no counter to the things I stated other than "perception" which is just another word for mischaracterization.

To answer questions below:

-I understand that you have not relieved me of the official PM/CE titles and responsibilities. I have stated that your actions (not just overriding but not even including me in it) made clear I do not have your support or the authority of those positions. I respectfully requested to be removed from those positions consistent with those actions. I offered suggestions for replacements. I took vacation days I had been saving for something else to allow more time thinking it would be come clear that those actions really did make it impossible for me to hold those positions. These were all good faith actions on my part.

-My obligation to SNC is to maintain my security clearances and eligibility for access which I do. Anyone accessed to a SAP can always state that they no longer feel they should be accessed and request debrief. This is not a negative on them or their company. It is not an action I take lightly which is why I attempted to resolve by asking you to remove me from those PM/CE positions consistent with the recent actions taken. I take my responsibilities and integrity in this domain seriously. I no longer have the authority of PM/CE to ensure compliance with CONOPS, which includes a very clearly stated responsibility to ensure people in billets are doing roles and activities consistent with their guidance. Part of the reason I've had success in rebuilding relationship with the customer is because I've stated a commitment to follow the CONOPS unlike my predecessors in both positions who… signed a document stating they read the CONOPS.. but beyond that seemed to do very little to attempt compliance with the guidance given what I walked into. Given that I can not represent myself as having the authority of PM/CE, or that I believe our actions are consistent with those CONOPS, it is not appropriate for me to represent otherwise to the customer, or to be asked to. My obligations to SNC are to execute all assigned roles with integrity and to do so to the best of my ability. In areas such as these it is not to be a "yes man", it is to act with integrity even in the face of pressure not to and protect both you and SNC and take responsibility for compliant program execution, to attempt to resolve any disagreements, and if my attempts at resolution fail, to take appropriate actions necessary. I have fulfilled all my responsibilities here. As stated, since I do not have authority to execute the roles, have been unsuccessful in stepping down from those roles, I have requested to be debriefed in a manner consistent with good practices as a cleared DoD professional.

-Once it became obvious this was a major issue that may not be resolvable I removed my personal items from the SCIF. I am not under any obligation to have those items there and given how things have played out I'm not sure how this could be looked at as a non-prudent action.

D-14

-I have not rejected any efforts to improve interactions and support to team. Can you please be more specific as to what efforts I have neglected? Even while on PTO I have supported WOMBAT team with their efforts, prepped one of my guys to effectively brief the iPMR team, prepped another one of my guys to effectively brief the classified customer, worked with Kim Underwood on weekly activity update (a PM responsibility), provided Pam with 2025 IRAD material prior to deadlines, and worked with WAMI PM on issues of interest. The only thing that I can think this might be referring to is accepting the updated workday goals. But given that to justify those new goals it was stated that I had "given myself titles", "debriefed out of spite", and taken inappropriate actions in HM, all of which were untrue, I'm not sure how to respond to them. I've tried my best to show and provide evidence to the contrary but have failed. Is it desired for me to act like those things are true just because someone said so?

I plan to do my work to the best of my ability just like I have since I arrived. I plan to attempt to resolve issues and maintain my integrity as well.

I offered to come in while on PTO to discuss. I have overly communicated my view on things and made requests to resolve for all parties. I don't think it is a communication issue. I think you feel I did something wrong that you needed to correct. I feel I not only did not, but actually have been working pretty hard for SNC to get HM compliant with customer guidance and expectations. I am getting ready to get on plane. I will call later in the day to see if you want to discuss anything here but I don't know how the differences in core elements would change.

V/R

John

---

**From:** Tim Woods <Tim.Woods@sncorp.com>
**Sent:** Thursday, May 9, 2024 7:41:04 AM
**To:** John Zedaker <John.Zedaker@sncorp.com>
**Subject:** RE: CE/PM

John,

Thank you for your note. I'm still disappointed that we've not been able to work through some of this. Regardless of the outcome, I would encourage you to communicate with your leadership – it goes a long way.

I'd like to understand your intentions given my understanding of the actions you've taken, which follow:

- You've requested to be removed as PM/CE for the Hall Monitor effort. I've not relieved you of that responsibility.
- You've requested to be debriefed from the programs you are read into. This is required in order to perform the essential functions of your position.
- You've removed most of your personal items in the SCIF

You've rejected my efforts to work with you on improving your interactions and support with the team

Please help me with what you plan to do as it appears you no longer want to do the work we hired you for. I believe this is a reasonable request given your actions/communications.

Happy to take a call John –

V/R

Tim
720-616-1623

**SNC Internal Information (Non-Proprietary)**

**From:** John Zedaker <John.Zedaker@sncorp.com>
**Sent:** Thursday, May 2, 2024 3:30 AM
**To:** Tim Woods <Tim.Woods@sncorp.com>
**Subject:** Re: CE/PM

Tim,

I believe we see things very differently so it doesn't seem likely we will reach common understanding. What I would hope that we could both agree on though:

-You deserve to have people in leadership positions that you trust and respect, to the point that if someone made an allegation against that leaders integrity you would at least give the leader the benefit of the doubt and want to hear their response to the allegations before making a decision.

Beyond that:

-I was no longer PM/CE once the agenda-driven allegations were assumed true and this was communicated to the HM leadership cadre and both directly and indirectly to the HM accessed personnel. I am just stating that I have no interest in pretending this did not occur or owning titles that are obviously untrue now.

-I am not avoiding a CONOPS discussion. I was here all last week but you were on travel and otherwise scheduled. I am now on PTO. If you would like me to come in to learn about your interpretation of CONOPS I will be happy to do so as long as I am in the State that day. However I am a close to 25 year DoD professional, have served as a legal officer for 2 different Navy squadrons, with experience writing CONOPS, experience being responsible for and following CONOPS or other DoD guidance

documents both within the DoD and in industry, plenty of which in SAP environments. I am comfortable with my interpretation of the CONOPS language which is pretty unambiguous in the areas we are focused on here. I respect that you may interpret it differently. I don't have a problem with that at all, but it does not change my interpretation, which I will continue to point out was in line with the interpretation of your program security personnel. Both the CONOPS and Addendum (equally as important) are in the CAVE safe and all the notable language is highlighted if desired to review.

-I took my first SNC PTO days in part to take a break, but mostly because if I did not I was probably going to debrief myself on Monday given what occurred and the fact that I was being asked to pretend to still be PM/CE when the bell was rung. Debriefing is not a negative on myself or SNC, but would have been a solution to the problem. I knew that you would consider it a unilateral action though, even though I disagree as there were actions taken that I am responding to, so I took the PTO course of action to allow more time.

-Given the above, it made sense to remove my personal items from SCIF. That is not a poor leadership reflection, it reflects the reality of the situation and recent actions.

-I already forwarded the email I sent to Brian explaining why Pena needed to be moved to other access and encouraged Brian to explain this to him. Security would have done so as well. This was communicating it.

-I like "destroyed" as it communicates how much the allegations against my integrity do not hold up to any of the evidence at hand. But "invalidates" works as well.

I do not agree that I did anything wrong or I have things to "work through". I would do all actions again, which is another reason new PM/CE would make sense.

V/R

John

---

**From:** Tim Woods <Tim.Woods@sncorp.com>
**Sent:** Tuesday, April 30, 2024 9:59:10 PM
**To:** John Zedaker <John.Zedaker@sncorp.com>
**Subject:** RE: CE/PM

John,

Apologies for not replying until today – got back ridiculously late on Friday and worked late. This week has been packed and I'm back on the road tomorrow.

A couple of things

I'm disappointed that you seem to have dismissed my request to review the conops and to work through this – you seem to have rejected any effort to correct the situation and insist on being replaced as CE/PM. Dismissing my request to meet with you on your concerns on the CONOPs is a bit off putting. I'm glad you are good as you stated but putting off my request to discuss is not ok.

I saw your PTO request on Friday night and approved it thinking you just need some time away and need a break. I respect that and approved it. I do find it a little non-standard that you never reached out to say, hey boss, I could use a break and am submitting a PTO request. Similar to some of what started the path of overriding your calls to de-access people, things would have been a whole lot better with some comms between you and your supervisor, me, on what you are doing and why. I also don't think you need to destroy accusations as you mentioned in your last note, rather work to ensure people understand your logic and frankly frustrations before they boil over.

I appreciate the fact that you seem to have spent the weekend again supporting the guys downrange. I am concerned by the removal of all of the items you brought in to build a nice environment for the team. I know they are your personal items and it's your prerogative to remove them if you like but as a leader and teammate, the sight picture was not good.

I will respect your PTO but I believe we need to talk when you return or prior on all of this. Please advise on when you are available to speak. Can you also confirm what day you are planning to return? 13 May?

Thank you John

Tim

**SNC Internal Information (Non-Proprietary)**

**From:** John Zedaker <John.Zedaker@sncorp.com>
**Sent:** Friday, April 26, 2024 12:54 AM
**To:** Tim Woods <Tim.Woods@sncorp.com>
**Subject:** Re: CE/PM

Also there were a couple of accusations in there that I realize weren't coming from you but are probably important for me to make sure I address:

-Accusations of punitive actions are easily destroyed by the fact that security was the first to indicate a need to debrief, I initially paused to review the CONOPS, then concurred and assumed responsibility for the action. Additionally I always indicated that Pena should be immediately put in for Hancock access so that he could do his new role, which is not consistent with a punitive action.

-Any accusations of "suspicious timing" are easily destroyed by the fact that the time when such

actions need to occur are when a role change occurs... it is the opposite of suspicious timing.

**From:** John Zedaker <John.Zedaker@sncorp.com>
**Sent:** Thursday, April 25, 2024 10:51:39 PM
**To:** Tim Woods <Tim.Woods@sncorp.com>
**Subject:** Re: CE/PM

Tim,

We are good. I respect you and your decision and understand all the below. You have treated me well here.

I am asking to please be replaced as PM/CE.

I am proud of everything I've done in those roles, including all the billet decisions, including Pena/Piko.

The Pena reward for his actions was a morale killer. Explaining it to my team was worse. Then finding out about the ACES plans really hit the engagement level for me. To have that followed up with having billet decision overturned, being accused of "giving myself titles", and "debriefing out of spite" really ended my desires to be in a leadership position in HM.

That said I had a really enjoyable week so I am not negative here. Our patches arrived, JT promoted, and did some enjoyable modeling work, so I am not upset. I've accepted how things are here and moved on mentally, but unlike others I have no desires to hold a title if it is without authority and I do not have leadership support.

My recommendation for new PM/CE would be Piko/Beam or Piko/Pena. All would love the news and may be a better culture fit.

No worries on tagging up. I am good and looking forward to the weekend. Thank you for approving JTs promotion and the req while on travel.

John

**From:** Tim Woods <Tim.Woods@sncorp.com>
**Sent:** Thursday, April 25, 2024 8:18:56 PM
**To:** John Zedaker <John.Zedaker@sncorp.com>
**Subject:** Re: CE/PM

John

Understand and appreciate your view of the situation and conops. I never like reversing someone's

decision and don't take that lightly. Unfortunately, in this case, I was not being informed by you but finding out about it through others and the timing and rapidity of the decisions seemed to oddly coincide with other personnel actions and therefore appeared to be punitive on your part. Realize that perception is real, particularly when you were not communicating with me on your read of the conop.

Prior to handing over the management of the bullet plan to you, I was holding that authority. I am willing to learn why I was apparently making bad calls but there were no comms from you on that.

Having worked very hard to secure the HM program for SNC personally, having been instrumental in setting up the program while I was Director of AF Special Programs and the OCA for nearly all AF SAPs and actively in the middle of all DoD SAP governance and understanding what the USG was trying to enable with HM like efforts and now having you drive in a different direction and finding out about it third hand was why drove that wonderment at what you were doing and stopping it before we spent the next 6 months trying to to get someone re-accessed and looking odd for deaccessing then reaccessing someone.

Clearly, you and I didn't have that conversation before so I must take some responsibility in this. However, I would expect that if you were taking a different approach that you would consult me.

We can fix this but I did what I did for those reasons. I'm also realizing that we need to adjust the process and we can work that together.

I spent a long time working with companies with such an access management plan. It wasn't just about M&OA it was about allowing industry to work with the USG effectively to bring new innovative ideas and to help prevent the stalemate in the SAP world with everything being so stovepiped. SAP reform is all about that. The people who interacted with that customer's programs, the labs, the cocoms and using commands were generally the people in the HM arena. The fact that you don't think Domain should be accessed befuddles me frankly given my background. No other company would have that stance given what we're asking him to do.

I have read the conops and drafts before it. I would still like to understand your specific concerns and points. I'm also not certain you have the right sight picture on where and how we are using certain people. You have your view in your seat. I've been working SAP programs since 1995, have developed and signed hundreds of class guides. Pls be open to my experience and wisdom as well.

I really do appreciate what you are doing and how you've helped be a stable presence with Jennifer and Meat and to be responsive to the conop. We needed that. Let's talk on your read of the conop and clarify with the customer if we need to but let's do that in a concerted manner with Deena, you, me.
I was hoping to talk tomorrow on the conop with you but am getting in after midnight and tomorrow is non-stop meetings and unless something falls out it will be Monday.

Finally - on the development action part of this. It's not punative, it's something that I'm seeing that you need to work on and we can work on if you are willing.

As your supervisor, I can and should revise your goals and provide feedback throughout the year. If you feel any of the goals or feedback are unreasonable or unachievable pls let me know. Willing to have the conversation, adjust, make more measurable etc but need your active participation.

Thanks John

Tim

Sent from my iPhone

On Apr 25, 2024, at 7:21 AM, John Zedaker <John.Zedaker@sncorp.com> wrote:

Tim,

I do not feel I am misreading the situation or took unilateral action.

Part of the responsibilities of both the CE and PM position is to ensure that appropriate people have access to billets in line with customer CONOPS.

Neither Peña or Piko in their new roles should be accessed. This is not punitive or a negative impact to their clearances as this occurs all the time if people no longer have a need for access and reflects good practices by SNC.

I gave the direction to security to debrief and it was overwritten. That is fine. But it means that I do not really have the authority or hold the position of either CE or PM and I have no interest in being a figurehead. As such I would prefer not to hold those positions and be the one saying to customer that we are following CONOPS if I do not feel we are.

I would say that if those billet decisions are not desired, all those decisions should likely be revisited, not just Pena and Piko.

Over roughly the past month I've worked with security and customer to move roughly 10 people with access into different billets in the program that better matched CONOPS requirements. Additionally there were three people (Vorgert/Woodard/Simonitch) debriefed as they no longer required access (similar to Pena/Piko) and were not consistent with CONOPS in billets they were in. None of these actions were punitive either.

John

**From:** Tim Woods <Tim.Woods@sncorp.com>
**Sent:** Tuesday, April 23, 2024 10:28:40 AM
**To:** John Zedaker <John.Zedaker@sncorp.com>
**Subject:** Re: CE/PM

John

You are misreading the situation.

You are the CE and PM for HM. I am not concurring with your unilateral decision to step down. You took actions without consulting with me and we will work through it.

I am on the road this week and would appreciate it if you would not take additional steps toward solving this in you mind unilaterally. I believe I can be fair and open to conversation. You owe me that much pls.

I need to get back into this mtg but will call you later.

V/R

Tim

Sent from my iPhone

> On Apr 23, 2024, at 5:11 AM, John Zedaker <John.Zedaker@sncorp.com> wrote:
>
>
>
> Tim,
>
> Thank you for the direction and guidance yesterday.
>
> I have appreciated the chance to fill the CE and PM leadership role, take on the challenging task of rebuilding a customer relationship and confidence level, and lead the design and execution of work that resulted in a successful PMR in a very short timeframe. I am proud of the work that I did there but no longer feel that I am the best person for the CE/PM positions.
>
> I have revisited the CONOPS and remain confident in the guidance I gave to the leadership team down here related to Pena and Piko. Neither should remain accessed given their new roles. The fact that security, having the most SNC familiarity with the CONOPS along with myself, also independently reached that same conclusion gives me additional confidence. I also have significant experience in understanding and adhering

to the precision of language of DoD guidance documents and do not feel any lack of experience there is impacting me. Finally, all of my interactions with the customer have indicated to me that they take that language seriously, expect me to adhere to it both personally and in a CE/PM leadership role, and they do not consider it optional, particularly as an industry entity.

>

> I respect and support your decision to override decisions made on both accounts and don't take it personally. However, that does make clear to our internal leadership team, SNC program members, and to the customer that I do not indeed have the confidence or authority to act as CE/PM on the program.

>

> I do respectfully disagree that there is a development action here for me. I feel that my actions in program leadership and in attempting to improve alignment with the CONOPS were positive and beneficial to SNC long term objectives. I also can't help but note that the 2 people who seem most judgmental of my actions were the PM and CE before me, and neither the customer relationship or program work execution were in good shape under their leadership.

>

> I will need to communicate my stepping down from these roles to Deena, Parker, and Anthony given our daily program leadership interactions and the responsibilities the CE/PM has to them. I will NOT make any communications of this change to the customer and will leave that to you or the new CE/PM. The next customer VTC which the PM position leads is next Tuesday.

>

> V/R

>

> John

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT E

E-1 through E-14

**From:** **John Zedaker** zedakerj@gmail.com
**Subject:** Re: [EXTERNAL] PSO Addendum
**Date:** May 16, 2024 at 11:54 AM
**To:** Parker Francis Parker.Francis@sncorp.com
**Cc:** Ellen Irving Ellen.Irving@sncorp.com

JZ

For clarification: Request SNC reconsider choosing not to provide my full perspective on debriefing to the DoD PSO.

V/R

John

> On May 16, 2024, at 10:48AM, John Zedaker <zedakerj@gmail.com> wrote:
>
> Thank you for the response.
>
> I understand that SNC has chosen not to provide my full perspective on events to the customer PSO even though that PSO will be making decisions that impact my career. I do not have any issues with SNC challenging anything I said with an alternate perspective. I have already provided a wealth of info to SNC entities, including just yesterday to Ms. Welty-Irving giving her my full breakdown provided to the ethics team. You are welcome to provide that to customer as well if desired.
>
> Regardless of whether SNC wants to contest anything I said, and I welcome it, the DoD PSO deserves all information regarding my rationale for requesting debrief. Particularly since this impacts my ability to pursue a new job and income, as I was fired by SNC without investigating anything and there is nothing new in my PSO addendum statement that SNC did not already know and choose not to investigate and fire me without investigating.
>
> I would request SNC reconsider this.
>
> V/R
>
> John
>
>> On May 16, 2024, at 10:33AM, Parker Francis <Parker.Francis@sncorp.com> wrote:
>>
>> Good morning John,
>>
>> I have provided the information you supplied to the internal SNC personnel responsible for reviewing such assertions and determining next steps.
>>
>> Thank you,
>>
>> Parker Francis, D. SL
>> Security Manager II, CSSO/CPSO
>> Site Lead, Special Programs Security
>> Sierra Nevada Corporation
>> 12510 E Belford Ave
>> Englewood, CO 80112
>> 720-572-2072 (o) I 720-572-2072 (m)
>> E-Mail: parker.francis@sncorp.com
>>
>> -
>> <image001.png>
>>
>> Non-Sensitive
>>
>> **From:** John Zedaker <zedakerj@gmail.com>
>> **Sent:** Thursday, May 16, 2024 8:12 AM

E-1

**To:** Parker Francis <Parker.Francis@sncorp.com>
**Cc:** Ellen Irving <Ellen.Irving@sncorp.com>; Ellen Irving <Ellen.Irving@sncorp.com>
**Subject:** Re: [EXTERNAL] PSO Addendum

Some people who received this message don't often get email from zedakerj@gmail.com. Learn why this is important

DO NOT click on links. Never open an email attachment *unless* you're 100% sure it's from a trusted source and you are expecting it.

Good morning,

Can you please confirm that the MFR and PSO Addendum statement has been sent to PSO for review at this point?

Thanks,

John

> On May 15, 2024, at 8:49AM, John Zedaker <zedakerj@gmail.com> wrote:
>
> Good morning,
>
> Confirming the MFR and PSO Addendum statement has been sent to PSO for review at this point?
>
> I have initiated discussions with a potential employer where this would be of impact. If they have not been sent, respectfully request SNC send this as soon as possible and confirm so that my job search is not impacted.
>
> Thanks,
>
> John
>
>> On May 14, 2024, at 11:10AM, John Zedaker <zedakerj@gmail.com> wrote:
>>
>> Thank you for confirming receipt. I would respectfully request notification from SNC of when the statement is forwarded to the PSO.
>>
>> Beyond that I believe that would conclude my direct business with SNC. I extend best wishes to everyone in their future endeavors.

If there is any information needed from me in the future on various work topics, since there was no pass down, I would be happy to provide any desired info that I can to support SNC efforts and retainment of knowledge.

V/R

John

On May 14, 2024, at 10:58 AM, Parker Francis <Parker.Francis@sncorp.com> wrote:

Thank you John for the email. I confirm receipt and will get this forwarded to the PSO.

Please let me know if anything is needed in the interim.

Parker

---

**From:** John Zedaker <zedakerj@gmail.com>
**Sent:** Tuesday, May 14, 2024 10:41:34 AM
**To:** Ellen Irving <Ellen.Irving@sncorp.com>
**Cc:** Parker Francis <Parker.Francis@sncorp.com>
**Subject:** [EXTERNAL] Re: PSO Addendum

Some people who received this message don't often get email from zedakerj@gmail.com. Learn why this is important

DO NOT click on links. Never open an email attachment *unless* you're 100% sure it's from a trusted source and you are expecting it.

Good morning Ellen,

I separated from SNC yesterday morning. During my separation I had questions about my security clearance and debrief. During that discussion it was indicated that the relevant PSO had important questions about my reasons for requesting a debrief and that they would be provided with my MFR and any additional information I wanted to provide. I sent the below email about an hour later after the drive home to provide my perspective on aspects of my request to debrief that would be important to the PSO in their determination.

Outside of the PSO wanting this information soonest, it is also in my interest to have this resolved as soon as possible. I will be engaging with future employers and they will be doing a security clearance check and any unresolved issues here would impact my ability to attain future employment.

I may have Parker's email incorrect but this was the best email for him to the best of my knowledge, and I've received no response or confirmation of receipt and forward to the PSO. I do have DoD friends who can provide me with the PSO's contact info to send them directly but I don't feel that is appropriate in general and I also would like to stay consistent with the SNC guidance that I was given during the firing meeting. Although I feel providing a DoD entity with information they requested would be fine with my read of it, I'd like to be safe in compliance with SNC expectations.

Can you please confirm if my PSO statement has been sent to the PSO? If not could you please provide an expected timeframe of when it will be?

Or are you comfortable with me sending this requested information directly to the customer for PSO review, with you and Parker copied?

Thanks for your time.

V/R

John

> On May 13, 2024, at 7:17 PM, John Zedaker <zedakerj@gmail.com> wrote:
>
> Parker,
>
> I did not hear back which makes me wonder if I wrote down your email correctly this morning. I tried Lloyd.parker as well but that got an undeliverable and I may not remember how you spell Lloyd.

If you did receive and can confirm that as well as confirm it was forwarded to PSO I would appreciate it. I do have contact info to send it to them directly but would prefer, and think it's more appropriate, to send through SNC to allow for any counterpoints SNC would like to make to my statements.

I would like to wrap this up and move on though so if you could confirm by tomorrow that would be helpful.

Thanks.

John

> On May 13, 2024, at 9:55AM, John Zedaker <zedakerj@gmail.com> wrote:
>
> Also would you mind confirming receipt please.
>
> Thanks.
>
> John
>
>> On May 13, 2024, at 9:16 AM, John Zedaker <zedakerj@gmail.com> wrote:
>>
>> Parker,
>>
>> As discussed below is information to add to my MFR statement for the PSO.
>>
>> ------

-If there are any questions about my debrief I would be happy to discuss them and my contact information is 360-632-0640 and zedakerj@gmail.com

-I would also recommend requesting a full unedited email thread between myself and Tim Woods with subject line PM/CE or possibly CE/PM. This covers a 2+ week back and forth on the issue at hand with last email from me to him sometime around 5/9. In it I am repeatedly indicating my discomfort with what I was being asked to do (state things I don't believe were true and represent myself as having

authority I do not have) as PM/CE and requesting to be replaced, while still remaining on the program doing operations analysis work, which was my primary job.

-Something that only started to be said since 5/10, was that "we hired you to be PM/CE". I believe this was a narrative used to justify the firing. However this is not true and reflected by the fact that when I joined the program I was not initially CE or PM and there was some debate on that fact. Eventually I was asked to be CE, due I believe to my strong work performance. One of the first things I did in that

position was to tell customer leadership, who was not happy with SNC's performance, that I take responsibility for those past failures even though I was not here, and would be responsible and accountable to her for SNC's performance on the program going forward, and that I would "get it done". As part of that I also took following the CONOPS seriously and tried to turn things around at SNC in that regard. Our security and IT teams had been doing a great job in trying to follow it, but the PM/CE positions had been lacking in this. So whenever I took an action with the customer I

would research the CONOPS and try to say "per the CONOPS" or "consistent with the CONOPS" when talking about what we are doing to show that I was committed to doing so. It was this approach, and what I thought was increasing customer confidence in me, which led to me being asked to fill the PM role on the program as well. Which was a lot to fill both those positions in addition to being the lead operations analyst and trying to do analysis on things throughout SNC beyond any particular program.

-I was fired today, because I requested to debrief, and

debrief, and as a result I do not have access to all the internal email correspondence and teams messages, otherwise I would forward them all openly. However I can just say that there is a wealth of internal communications available that could be shared. And if they are all shared, not just a select few to craft a narrative, I believe it would clearly show me trying my best to have integrity and be a trusted DoD partner. I have been passionate about national defense since I was a kid, enlisting in the Navy before college, then going to college and commissioning as an Officer, then getting out

and choosing DoD contracting work. SNC brought me here because of my DoD analysis and SAP experience which they are severely lacking. However when this experience meant that I pushed back on things that were being done that needed to change to be compliant, it became a problem. I am not perfect but I did the best I could in advocating for the course of action I thought was right, tried to resolve conflicts to an agreeable solutions (step down as CE/PM so someone who believes differently than me can put their reputation on line with customer), and when

unsuccessful I chose to keep my integrity and do what's right and request to debrief, knowing that if I did I would likely be fired because that was strongly insinuated. I have no job lined up or other source of income. I took the actions I did knowing this and still feel good about it because I feel I did the right thing.

-While I do not have the relationships that Mr. Woods has, I do have ~25 years of DoD experience on active duty and as a contractor. I've served them all with integrity and I do my best to bring that to my roles and to have my word mean something, in particular to DoD entities. I had a

CONOPS and tried to follow it. Mr. Woods several times indicated that customer doesn't follow their own CONOPS most of the time and he had been in a leadership position there in 2011 so he knows what they "meant". I did not have the luxury of that attitude because I did not have his connections, was in roles (PM/CE) that he was not that had specific requirements and consequences for not following the CONOPS, and was receiving direction from customer leadership regarding my responsibility to follow the CONOPS unless told otherwise.

Thank you for the opportunity to

opportunity to do work on your program. I hope that it was impactful to your objectives.

V/R

John Zedaker

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT F

F-1 (1 page)

10:04 5G E

+1 (720) 616-1623 >

iMessage
Friday 4:18 PM

John - sorry I missed your call. From your last e-mail, I'm clear on your viewpoint and desires.

Will talk Monday.

Have a nice weekend.

I understand. Thank you.

Yesterday 5:44 PM

Tim I learned today that customer may have been told that I acted improperly on program. Can you please confirm if this is true?

While I had accepted that with you I was not going to change what you had decided, and it wasn't worth me taking things further in regards to having false allegations made against me, extending these allegations to DoD which would impact my career and ability to support this

iMessage

F-1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT G

G-1 (1 page)

+1 (720) 616-1623

Tim I learned today that customer may have been told that I acted improperly on program. Can you please confirm if this is true?

While I had accepted that with you I was not going to change what you had decided, and it wasn't worth me taking things further in regards to having false allegations made against me, extending these allegations to DoD which would impact my career and ability to support this customer or other customers in future is a different story and I would then need to request a formal investigation against those allegations.

The CONOPS, program security concurrence, and past consistent billet actions on program under my leadership all support that proper actions were taken with Piko and Peña.

Delivered

iMessage

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT H

H-1 (1 page)

NEXIGO

Search

Chat Files Organization Activity +

4/12 7:10 AM

Morning. I need to reference your MFR in the quarterly report. Is that somewhere I can look at so I know what it said?

Parker Francis 4/12 8:22 AM

hey John I apologize but this has fallen off of my radar. been very busy with other program stuff. I'll write this up this morning and get you the language

4/12 8:46 AM

okay no worries. I'm trying to have a first draft of the report done by noon and then I'll point you towards it. There are a couple of things related to Security that I want to make sure I'm saying correctly. I think I remember what you were going to say in the MFR so I'll reference it like that and correct if I get it wrong.

Parker Francis 4/12 9:01 AM

sounds perfect

April 15

4/15 11:56 AM

I'll talk to customer tomorrow about personnel factors. I know you said Deena is holding Sheryl for a minute. For Pena has his debrief been scheduled?

Parker Francis 4/15 11:57 AM

it has not, It was my understanding he is going to remain accessed. I asked Tim for more insight to Sheryl and Pena and havent received anything back yet.

I can schedule it if you would like me to sir

Parker Francis 4/15 12:25 PM

MFR has been sent to Meat for review and approval

4/15 12:55 PM

Yes. He'll be debriefed and put in for the thing Hancock has. Or if they override me then I'll be debriefing I guess. Thanks for sending the MFR. I'll remember to bring that up tomorrow too.

Parker Francis 4/15 2:40 PM

Ok I'll reach out to Dom and set something up

Type a message

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT I

I-1 (1 page)

Search

Chat Files Organization Activity +

Meat confirmed receipt and stated he will review

So I am holding off on Sheryl for the time being correct?

4/15 2:53 PM

Thanks. Not from me. I told Deena my read of CONOPS says she should be debriefed. I thought you said Deena wanted to wait until she talked to Tim though. I'm comfortable being the one saying to debrief her though. CONOPS is pretty straight forward for both her and Dominic.

Parker Francis 4/15 2:54 PM

I agree but because there is a message out to

4/15 2:54 PM

I'm also working on a CE brief that's called out in the documentation. I'll send over to you and Deena on CORE to take a look probably by tomorrow.

Parker Francis 4/15 2:54 PM

Tim, can I wait a few more days until he responds

4/15 2:54 PM

For Sheryl?

Parker Francis 4/15 2:54 PM

oh awesome

yes sir, we have a message out to Tim. Deena mentioned to him that per the CONOP there is not need for Sheryl to be briefed. He stated he owes her an answer

4/15 2:55 PM

I honestly don't care too much about Sheryl. I would like to get Dominic debriefed as soon as possible.

Parker Francis 4/15 2:56 PM

yes sir, I'll schedule that right away

4/15 2:56 PM

whatever you guys want to do with Sheryl is fine. I think she should be debriefed.

Type a message

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT J

J-1 (1 page)

NEXIGO

Search

Chat Files Organization Activity +

whatever you guys want to do with Sheryl is fine. I think she should be debriefed.

but I agree that is an area Tim may want to have inputs on

Parker Francis 4/15 2:56 PM

yes sir

April 17

4/17 8:36 AM

Hey, morning, are things moving forward with Dominic?

Parker Francis 4/17 8:44 AM

hello, sorry man. I havent been able to reach out to Dom. I'm looking for the emails pertaining to his debrief. I was under the impression Tim wanted to keep him on. If you give me the go ahead as the PM to debrief, I'll set it up

4/17 9:26 AM

Yes, I realize that puts you in a bad position, but based on CONOPS he needs to be debriefed so that is my guidance. I realize that Tim may undercut me. But I kind of need that to play out. If he does undercut me then I'm not really the PM/CE and it's all BS and I'm just the fallguy. At which point I'll tell him that and I will debrief.... it would be nice if this played out before weekend as if I do debrief then I won't need to work the weekend and can get out and explore CO a bit.

Parker Francis 4/17 12:07 PM

I'll debrief if you would like me to. As the PM it is your prerogative

I have not heard anything back from Tim or Deena

4/17 12:10 PM

I talked with someone at SSp today... so that Marshall/Lauren story you told me wasn't really about here huh 🙂

Yes he needs to be debriefed and put in for the Hancock/Turk program. I'll stand by for the relevant push back.

Parker Francis 4/17 12:11 PM

yeah from what I gathered, it was about that individual's reputation

it's a small world so people tend to fall into categories

I sent him an IM

Type a message

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT K

K-1 (1 page)

Search

s Chat Files Organization Activity +

4/17 12:10 PM

I talked with someone at SSp today... so that Marshall/Lauren story you told me wasn't really about here huh

Yes he needs to be debriefed and put in for the Hancock/Turk program. I'll stand by for the relevant push back.

Parker Francis 4/17 12:11 PM

yeah from what I gathered, it was about that individual's reputation

it's a small world so people tend to fall into categories

I sent him an IM

I'll let you know if I hear anything from anyone other than you about his status

4/17 12:23 PM

Thanks

Parker Francis 4/17 12:33 PM

He is asking to wait until Monday. I told him I'd get with the PM to ascertain if this will work

I also cautioned him on the perception of pushing back

I can wait until Monday but I can tell we need to get this done before he goes on PTO

April 23

4/23 8:41 AM

dropped off OA patches to your team. Left two on your desk, one for you and one for Deena.

Parker Francis 4/23 9:08 AM

just want you to know, you saved this program. There are others that believe this as well

4/23 9:09 AM

all good dude, thanks. appreciate your help with everything.

Parker Francis 4/23 9:09 AM

of course man, I just felt you should hear that

Type a message

K-1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT L

L-1 through L-10

10 Feb 2026

Subj: Alternative Methodology Dissection of the 16 May 2024 SNC MFR to DCSA/AFOSI

Overview: Instead of going through MFR and stating why parts of it are inconsistent or contrary to the evidence submitted in the IG complaint, this is a go through of the evidence submitted by timeline and indication of how it conflicts or is relevant to SNC's official statements to DCSA/AFOSI.

Rosetta: For simplicity in repeated use the following initials are used for

JZ = John Zedaker, Program Manager and Chief Engineer of the SAP
TW = Tim Woods, Senior SNC Vice President without a leadership role on the SAP
DH = Deena Hartell, Senior Security Manager on the SAP
PF = Parker Francis, Security Manager on the SAP (second in command to Deena, the only one of the two of them that was local and consistently present in Colorado and in the SCIF)
AR = Antony Roscio (SAP IT Manager and member of the SAP leadership team)
BB = Brian Beam, SNC Senior Director who had no leadership role on the SAP

## April 10

**Evidence: 8:42am email sent from JZ to DH, AR, and PF**

Reveals: JZ carrying out normal PM duties and informing the other SAP leadership of some changes to personnel responsibilities on the SAP. The changes in responsibilities for both individuals discussed had been communicated to me previously by TW and BB. While not able to be specific SAP CONOPS had requirements based on what individuals do on the SAP.

**Evidence: 10:36am email sent from DH to JZ, AR, and PF**

Reveals: DH gives guidance in her role as SAP Security Manager that both personnel (Piko and Pena) will need to be debriefed based on CONOPS requirements.

SNC MFR Connection: SNC's MFR refers to a JZ's strict interpretation of the CONOPS as being a factor in the debrief. It intentionally hides the real underlying issue that TW was interfering with proper execution of SAP leadership team responsibilities. The fact that the supposedly "strict interpretation" was made by the SAP security lead (DH) also makes SNC's MFR statements misleading. Also though 2 individuals are being discussed here, similar actions on 10-15 program personnel, either reassigning to different billets or removing from billets based on CONOPS requirements had occurred over the prior 2 months in coordination with the USAF customer.

**Evidence: 10:55am email from JZ to DH, PF, and AR**

Reveals: JZ taking the guidance of his SAP Security Lead but also indicating a need to read the CONOPS before responding. It also reveals JZ and the rest of the SAP leadership team is aware of TW having a particular interest in billet usage and that was an issue to be navigated. It was a of specific interest related to Piko as she was known to have some type of "special" relationship with TW.

**April 11**

**Evidence: 8:45am email sent from JZ to DH, AR, and PF**

Reveals: JZ indicating that he had reviewed the CONOPS following DH's security recommendation, concurred with DH's recommendation, and directed both SAP Security to debrief both Piko and Pena as the CONOPS was explicitly clear on the matter. It also reveals that JZ executed his PM roles properly in directing the SAP actions and was aware that he would need to deal with TW's desires to exert his authorities on the SAP, especially in the area of billets.

SNC MFR Connection: The entire exchange here on the matter shows professional handling of the event that would later lead to TW's wrongful actions. It also reveals how the SAP leadership team utilized the CONOPS as the factor in their decision making and had full awareness of how the SNC senior executive who was not on the leadership team, had a particular interest in the billet usage of the SAP. This conflicts with several characterizations within the SNC MFR.

**April 15**

**Evidence: 11:57am TEAMS message sent from PF to JZ**

Reveals: PF was very aware that TW had inserted himself as the "real PM" and was giving Security guidance to do things against the PMs guidance. It also reveals that he was aware that the PM was suppose to have ultimate authority of the program.

SNC MFR Connection: The SNC MFR indicates that security did not know about the issues leading up to JZ requesting to debrief. This shows they were very aware and had direct knowledge. MFR also describes JZ as having "perceived understanding of his role", this communication shows that PF shared that supposed "perception", which shows that PF was not being honest in authoring the MFR.

**Evidence: 12:55pm TEAMS message sent from JZ to PF**

Reveals: One of several instances of JZ discussing possibly needing to debrief if TW would not allow him to execute the PM role in a compliant manner and also not allow him to step down from it.

SNC MFR Connection: SNC MFR indicates 4/17 was JZ's first mention of possibly needing to debrief. This shows it had been freely discussed with security before that as a possible path that might need to be taken if TW continued to direct actions that were not compliant with the CONOPS and tried to force JZ to take responsibility for them by not letting his step down as PM if TW didn't alter his actions. PFs response, or lack of response here also heavily conflicts with his indications of what he communicated in the 25 April meeting.

**Evidence: 2:54pm TEAMS messages sent from PF to JZ**

Reveals: PF indicating he agrees the CONOPS requires the action that TW was preventing. PF indicating that DH had informed Tim that Piko also needed to be debriefed, but Tim had told her he needed to think about it.

SNC MFR Connection: The SNC MFR indicated that JZ had a "strict interpretation of the CONOPS" that was a problem. This shows that all members of the SAP leadership team had

agreed that the CONOPS required the actions that JZ had directed. Considering that PF was the author of the MFR this reveals a blatant attempt to misrepresent events. This also clearly shows that TW had inserted himself as the "shadow PM" and was leveraging his authority as a senior executive outside of the SAP to direct SAP leadership activities. TWs response to DHs indication that the CONOPS required a debrief insinuates that he felt that his desires and authority overrode any CONOPS requirements.

## April 17

**Evidence: 8:44am TEAMS message sent from PF to JZ**

Reveals: TW was overriding PM decisions on the SAP. PF acknowledged the PM had that authority not TW.

SNC MFR Connection: Reveals SAP Security, authors of the MFR, were very aware of TWs actions in undermining the SAP PM and felt that it was wrong. However in their MFR they act as though JZ as PM had "perceived" authorities that he did not have. This is a blatant misrepresentation. Also the casual mention of working a weekend with no security response shows just how common this was for JZ to do, and that security had never expected any coordination.

## April 22

**Evidence: 8:20am email sent from JZ to BB, DH, and PF**

Reveals: JZ executing his PM responsibilities, in concurrence with DH and PF, and informing the manager of one of the individuals who needed a billet change (Dominic Pena) of the need to do so to be compliant with the SAP CONOPS. There was no response to this email. This shows attempts by JZ to properly and professionally execute his role as PM in concert with security, full awareness from PF and DH of the issues at play. Also shows these actions were communicated to the USAF customer.

SNC MFR Connection: One of many examples that conflicts with SNC language that the point of contention "following SAP billet rules" was a "perceived role" JZ had and a "strict interpretation" of the CONOPS, or that the writer of the MFR was not fully aware of the issues at play given that at the time this email was sent, the MFR writer was also fully aware that TW was telling them not to do what was being discussed here.

**Evidence: 5:32pm email sent from JZ to TW**

Reveals: Forwarded JZ's email relating to coordination of the billet action to TW following a VTC wherein TW directed JZ to do things that were not compliant with the CONOPS and made several statements about events that were not accurate. In this case TW had stated in the VTC that JZ had not been communicative to relevant parties on the action. This email showed him that was not accurate and JZ had professionally communicated the action, the why, and the alternative path needed to BB who was the manager of one of the persons needing to be debriefed (Pena).

SNC MFR Connection: Though the VTC was not recorded these emails sent immediately following reveal the nature and general topic of the conversation within it. They also show how JZ as the PM both addressed his supposed concerns and also provided evidence that everything JZ had done was very professional and driven by my responsibilities to the USAF to ensure compliance with the CONOPS.

**Evidence: 5:39pm email sent from JZ to TW**

Reveals: Forwarded the 10 April email chain of the conversation between SAP leadership related to Pena and Piko, which specifically noted how they had conferred as a team and made the determination based on the CONOPS and how it was DH who, in her role as SAP Security Manager, had been the one who indicated that the debriefs needed to occur to remain be compliant with the USAF CONOPS.

SNC MFR Connection: Similar to the 5:32 email forwarding, this highlights what was discussed in the VTC with TW and the underlying issues involved. It also shows JZ's attempts to resolve the matter with TW.

**Evidence: 9:40pm email from TW to JZ**

Reveals: TW acknowledging the forwarded emails but also not saying anything to address the fact that TW was inserting himself into SAP leadership responsibilities and trying to pressure those leaders to acquiesce to his desires and not base those leadership decisions on the CONOPS. Also, this is notable of one of the many times that TW is doing work at "off hours" that SNC insinuated was unusual for JZ in their MFR.

**Evidence: 10:20pm email from JZ to TW**

Reveals: JZ making it very clear to TW (tricky situation, as TW was JZ's supervisor and an SVP) that the daily decisions JZ needed to make as PM were required to be compliant with the CONOPS and TW's wants and desires did not override that. Also JZ expresses full awareness that TW has the power to select a PM/CE on the program, but emphasizes to TW that the PM/CE, once selected, had an obligation to take ownership and responsibility for SAP activities and ensure CONOPS compliance.

SNC MFR Connection: This entire exchange highlights the core issues at play that would only build over the next few weeks wherein TW continues to pressure JZ to acquiesce to TWs desires to take SAP actions that were not in compliance with the CONOPS and JZ's insistence that he would not go along with that if he was the PM/CE of the SAP. In SNC's MFR they deliberately do not disclose this core issue and make several statements to reframe things towards false narratives. Also, this is notable of one of the many times that JZ is doing work at "off hours" that SNC insinuated was unusual in their MFR.

**April 23**

**Evidence: 5:11am email sent from JZ to TW**

Reveals: After the meeting the previous day where TW made very clear to JZ that TW expected to be the shadow/real PM of the SAP and would prevent JZ from carrying out his responsibilities as the designated PM, JZ sent this email to TW re-emphasizing that the actions TW was directing were not compliant with the CONOPS, the SAP security leadership team had also independently reached that conclusion, and that TW's actions prevented JZ from carrying out JZ's PM/CE responsibilities. JZ indicated that since this was the case he needed to inform the other members of the SAP leadership team that he was not the PM/CE. There is also no mention of debriefing as JZ had many other duties on the SAP as an analyst and had been on the SAP before he was PM/CE doing only the analyst work.

SNC MFR Connection: One of many attempts by JZ to handle the situation professionally and remove himself from wrong-doing. It was a clear communication to TW that what he was

doing was not compliant with the CONOPS, his actions in preventing the PM from carrying out his duties, and it was also an attempt to resolve the matter without debriefing by remaining on the program but not being in the PM/CE roles. In SNC's MFR they deliberately misrepresent their knowledge that TW undermining the PM and directing wrongful SAP actions was the underlying issue and make false statements about allowing an option where I could remain on the SAP in a support role and I chose not to. Also this is notable of one of the many times that JZ is doing work at "off hours" that SNC insinuated was unusual in their MFR.

**Evidence: 8:49am email sent from JZ to DH, AR, and PF**

Reveals: JZ communicated to the SAP leadership team (DH, PF, and AR) that he had the discussion with TW and as a result needed to remove himself as CE and PM of the SAP

**Evidence: 10:28am email sent from TW to JZ, DH, AR, and PF**

Reveals: TW indicating he did not concur with that action. TW did have the ability to decide who was assigned to PM and CE positions on the SAP. TW was taking actions that prevented JZ from executing responsibilities as PM and CE but would also not allow JZ to step down from the role and remain on the program doing non PM/CE work (operations analysis work)

SNC MFR Connection: SNC indicated that when JZ discussed debriefing from the program in order to avoid participating in the wrongful actions some redacted individual had told JZ that he should not debrief because this would prevent JZ from remaining on the program in a non-PM/CE program support role and needed to maintain access for that. This is a blatant lie proven by not only this email but also others wherein JZ tried to do just that (remove himself from the PM/CE roles that TW was preventing proper execution of) and just do other program work. This was JZ's preferred option but TW refused multiple times to allow that, because (1) JZ had done a great job in those roles in turning the SAP around and building trust with the customer and (2) TW wanted to pressure JZ to "play ball" with his wrongful actions.

**Evidence: 10:28am email sent from TW to JZ**

Reveals: TW acknowledged here that JZ was the PM and CE but also indicating that TW felt the PM needed to consult with him and gain TW's approval in the carrying out of those duties.

SNC MFR Connection: While "consulting" is somewhat benign language, given the meeting the previous day when TW had directed JZ to take specific SAP actions that were non-compliant and TW's actions in going behind the PMs back and directing SAP security personnel to do those same things, it was clear TW expected to have true ownership of the SAP and that PM and others go along with whatever he directed even if it conflicted with the CONOPS. This is also one of many examples of TW intentionally preventing the option of stepping down from the PM/CE roles and remaining on the SAP, in direct contradiction to what was indicated in the SNC MFR. Also this conflicts with SNC MFR's statement that JZ had a "perceived" role as PM that did not align with reality.

**April 25**

**Evidence: 7:21am email sent from JZ to TW**

Reveals: Continued examples of JZ speaking to TW on the core issues of TW preventing proper execution of the SAP PM/CE roles

SNC MFR Connection: SNC does not openly provide the reason for the request to debrief as they are required to do, and insinuates that the debrief of 1 particular person was a causal factor wherein here this communication shows that was not the case.

**Evidence: 8:18am email sent from TW to JZ**

Reveals: TW stating he had reversed the SAP PMs decision, an action that he did not have the authority to do given the CONOPS documents and SAP program designations of authority to the PM. It also reveals that TW felt he had that authority prior to JZ becoming the PM, which is an odd statement because TW was never the PM of the SAP. Prior to JZ, other SNC employees were PM, however they were known to just do whatever TW directed, which was a problem JZ was trying to address.

SNC MFR Connection: Another clear indication of the core issue that led to the request to debrief, which was not provided in SNC's MFR as they are required to do. MFR also describes JZ as having "perceived understanding of his role", this communication shows that TW knew that he had usurped and undermined the PMs authority on the matters at hand and that JZ had that authority as PM. While TW tries to justify it saying he had that authority before JZ did, this is problematic because (1) there is only one PM at a time so just because someone had that authority previously does not mean they are able to override the current PMs actions and (2) TW never actually had the PM authority, he merely was use to PMs who allowed him to be the "shadow PM" directing their actions without being accountable for them.

**Evidence: 10:51pm email sent from JZ to TW**

Reveals: One of many attempts by JZ to step down as PM/CE which was not what he was hired to do due to TW preventing him from being able to carry out his responsibilities, and TW preventing him from stepping down. JZ showing obvious attempts to resolve the issue, remain on the program doing his primary work, and offering new PM/CE options.

SNC MFR Connection: One of many examples that shows that SNC's indication in their MFR that JZ had the opportunity to remain on the SAP but not serve in the PM/CE roles was not truthful. This also continues to reveal the true issue at play which SNC's MFR attempts to obfuscate, and they do not provide even though they are required to.

## April 26

**Evidence: 12:54am email sent from JZ to TW**

Reveals: JZ addressing TWs attempts to mischaracterize PM actions and their compliance.

## April 30

**Evidence: 9:59pm email sent from TW to JZ**

Reveals: TW approved JZs PTO request prior to his PTO. TW indicates how he appreciates that JZ "again" worked the weekend to support SNC activities.

SNC MFR Connection: SNC indicates that JZs PTO was not coordinated with leadership, a blatant lie that insinuates suspicious behavior. SNC in their MFR states how JZ worked "odd hours" and did not coordinate with CPSO/CSSO. TWs statements here indicate it was well-known and common practice for JZ to work weekends towards achieving work objectives and

their is no indication that TW found this suspicious or expected coordination with anyone, which is a direct contradiction to the picture SNC attempted to paint with their MFR.

## May 2

**Evidence: 3:30am email sent from JZ to TW**

Reveals: Continued discussions on the core issues leading to the request to debrief being TW preventing JZ from being able to execute his roles as PM/CE but also not allowing him to step down from them. It also reveals open discussion about his reasons for taking PTO and removing his personal items from the SCIF

SNC MFR Connection: SNC discusses the PTO and personal items removal as though they were odd, unexplained actions by JZ. They do not reveal the fact that they were fully aware of the reasons for both, and that they tied into the core issues at play in TWs prevention of proper execution of the PM/CE responsibilities.

## May 9

**Evidence: 7:41am email sent from TW to JZ**

Reveals: TW statements here make it clear that he is not allowing an option to step down from PM/CE positions and remain on the program.

SNC MFR Connection: SNC MFR indicates JZ had the option to remain on the program without holding PM/CE responsibilities.

**Evidence: 10:50am email sent from JZ to TW**

Reveals: Clear and open communication between JZ and TW regarding the core issue being TW refusing to allow proper execution of JZ's PM/CE roles and responsibilities.

SNC MFR Connection: SNC in their MFR avoids revealing the true reasons why JZ requested to debrief and that it came after extensive attempts by him to resolve the interference of TW in his PM/CE responsibilities. DCSA's reporting requirements require SNC to provide the reasons for someone requesting to debrief. Because those reasons were problematic for SNC, they chose not to. This communication also reveals clear communication of the fact that JZ took PTO days specifically to allow TW an opportunity to change his actions before JZ was left with no other option that to debrief. This exchange is yet another example of TW refusing to allow JZ the option of stepping down from the PM/CE roles and remaining on the program. SNC in their MFR indicate that they had offered JZ this option, a blatant lie.

## May 10

**Evidence: 12:26pm email sent from JZ to PF**

Reveals: JZ communicated professionally with PF to schedule a program debrief after being unable to alter TWs SAP actions or reach a resolution with TW that allowed JZ to no longer hold the PM/CE positions but remain on the program doing his operations analysis work. JZ also indicated that he would

SNC MFR Connection: This scheduling and language was consistent with previous conversations with PF and TW regarding the only option JZ was allowed which was either to remain on the program as PM/CE and "play ball" with the wrongful actions of TW or to request to debrief for the reasons of not being comfortable with what SNC was doing on the program. Also of note here is that JZ specifically communicated to PF that he would let TW, PF, and the replacement PM communicate this to the customer as this was the professional way to handle it. JZ did not anticipate that they would be untruthful in that communication however and state that the reasons were anything other than JZ's discomfort with what SNC and TW was doing on the SAP (specifically directing wrongful billet utilization and acting as a shadow PM usurping the responsibilities of the real PM). SNC's MFR indicates that they were not truthful however and tried to craft alternate narrative and leave out key information in order to avoid having their SAP actions investigated by the customer. Additionally this also conflicts with SNC's MFR contention that they in some way offered an option to remain on the program but not fill the CE/PM roles and JZ to just execute his OA responsibilities on the program. That is shown to be a lie by several communications provided. The "as discussed before, there should be no negative connotation to the debrief" directly contradicts the SNC MFR statement on what was communicated in the 25 Apr conversation between PF and JZ about the issue

**Evidence: 11:54am (seems to be small error in outlook time as time is before the email that is being replied to, believe actual time was 12:54pm) email sent from PF to JZ**

Reveals: PF informs JZ that the debrief needed to occur at 0730 for reasons that were not truthful.

SNC MFR Connection: There is no reference to SNCs fabrications in the SNC MFR regarding what PF had communicated to JZ on 25 April regarding debriefing which would seem to have been warranted given SNC's MFR statement. Additionally if SNC's MFR statement were true about that conversation then PF would have been expected to respond to JZ's statement in the "as previously discussed" line with some indication that this was not the case. The lack of doing show reflects communications completely inconsistent with SNC's MFR statements about the 25 April discussion.

**Evidence 4:18pm text message from TW to JZ**

Reveals: TW was still actively trying to get JZ to remain as SAP PM/CE until he learned that JZ had moved forward with his request to debrief.

SNC MFR Connection: All of SNC's allegations and insinuations related to "odd behaviors", accessing of the SCIF after hours, "perceived" responsibilities, "strict interpretations", etc that they made in the MFR were known prior to 5/10 yet they were still trying to get me to "play ball" with their non-compliant behaviors and remain as SAP PM/CE, a position of high trust and responsibility. It was not until I officially requested to debrief that TW made the decision to fire me. Thus it is obvious that SNC was not really concerned about any of the things that they tried to insinuate, instead they were scrambling to try to hide the reasons why I requested to debrief and to damage my character and reputation.

**Evidence 8:31pm email from JZ to PF**

Reveals: JZ responds to request for new debrief time in a professional manner and asks that PF ensure TW is aware of that change as well showing that he was openly doing so and ensuring the awareness of all parties. Also indicates JZ's intention to conduct a professional debrief and even willingness to come in on weekend to do that since the debrief had to be 0730 on Monday and would not allow for doing the pass down then.

SNC MFR Connection: JZ casually communicating the intention to work on the weekend without coordinating anything and PF's lack of request to do such a coordination reveal both that it was common for JZ to work weekends and that coordination was never expected or required as SNC indicated in their MFR.

**May 11**

**Evidence: 5:44pm text message sent from JZ to TW**

Reveals: After JZ learned that TW and SNC was trying to falsely frame JZ's request to debrief, JZ sent a direct text message to TW (was read but not answered) asking him to confirm if this was true. The core underlying issue (TW directing billet usage against SAP CONOPS rules) is also detailed.

SNC MFR Connection: Reveals that SNC was fully aware of the main issue and reason that JZ requested to debrief but did not disclose it openly as they are required to do. The conversation is also completely inconsistent with what SNC says was communicated in the 25 April meeting wherein they state that they provide details on how the request to debrief would be treated. This text message would make no sense if that account was true.

**May 12**

**Evidence: 10:00am email sent from JZ to PF, TW, DH and BangOne Angerman (HR Rep)**

Reveals: JZs response and open communication to leaders upon learning when he went in to do the pass down work, that his access to many elements of the SCIF and in particular the communication networks with the USAF customer had been removed.

SNC MFR Connection: This communication reveals JZ's immediate request for investigation into the matter and attempts by JZ to ensure that the highlighted program CONOPS, highlighted CONOPS addendum, and classified handwritten MFR regarding billets that were all in the program safe due to their classification levels were not destroyed given that SNC had revealed intentions to not be open and honest about what was occurring. JZ's description of the 4/25 discussion with SAP security were also immediately consistent with all the events that occurred while the SNC description of it in their MFR are not consistent with events and seem designed to correct a problematic aspect of the narrative they were trying to craft. Not only are several pieces of this evidence provided inconsistent with SNC's statements of that 4/25 meeting, JZ's immediate reaction to learning how SNC was trying to frame events would make no sense if that 4/25 discussion had occurred as SNC stated that it did.

**May 13**

**Evidence: 9:55am email sent from JZ to PF**

Reveals: JZ openly provided information to the PSO on his reasons for requesting to debrief.

SNC MFR Connection: SNC's MFR seems to speculate on JZs reasons for requesting to debrief without ever mentioning that JZ had provided such a statement to them/PSO upon his firing.

**May 16**

**Evidence: 10:33am email sent from PF to JZ**

Reveals: SNC delayed providing highly pertinent information to AFOSI/PJ and SAP PSO on the incident.

SNC MFR Connection: SNC indicated multiple conversations they had with AFOSI/PJ and SAP PSO but does not make any indication that JZ had provided information during his firing regarding having submitted a USAF IG complaint, the classified MFR and highlighted CONOPS left in the SNC safe which spoke to SNC wrongful actions on the SAP, and had provided a statement for the PSO on his reasons for requesting to debrief. SNC would have likely been required to provide that information immediately or within 24 hours to such authorities. The fact that they omitted all of that information from their MFR reveals a lack of transparency.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT M

M-1 through M-2

**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
BUILDING 601 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

April 7, 2026
DCSA-M 26-05060

Mr. John M. Zedaker
189 Indigo Loop
Miramar Beach, FL 32550

Dear Mr. Zedaker:

This is in response to your February 5, 2026, Privacy Act Amendment/Expungement request seeking to amend your Defense Information System for Security (DISS) records by correcting a Joint Access Database Environment (JADE) record and Personnel Security Program (PSP) related to a May 13, 2024, debrief from a Special Access Program (SAP) while working for the Sierra Nevada Corporation. We received your amendment request on February 20, 2026.

We have reviewed your request and supporting documents and are unable to amend your DISS record based on the lack of factual documentation (32 CFR § 310.7[a]), as it does not aid in outlining how the DISS record is not accurate, relevant, timely, or complete without your requested corrections. The record that you wish to amend was provided by the Sierra Nevada Corporation, which is required to report the information in accordance with Security Executive Agent Directive 3 (SEAD 3), therefore the record within your file is accurate. The information in DISS is required to be maintained as part of the adjudicative record for review and historical purposes.

We also determined that the Privacy amendment process is not the appropriate avenue for a request of this nature. The adjudicative process is governed by Executive Order 12968, DoD Instruction 5200.02, and DoD Directive 5220.6. Our review of DISS revealed that your case is currently pending review. If a preliminary decision is made to revoke or deny an individual's security clearance eligibility, after disqualifying information surfaces that fall under the Adjudicative Guidelines, the individual is provided an opportunity to respond prior to a final adjudicative decision being made. At that time, you may submit an official response for consideration.

You have the right to appeal this response by submitting a request to the Amendment Appellate Authority via e-mail at dcsa.quantico.hq.mbx.foia@mail.mil, or in writing to the Defense Counterintelligence and Security Agency, ATTN: Amendment Appellate Authority, P.O. Box 618, 1137 Branchton Rd, Boyers, PA 16018. If mailing the appeal, clearly mark the outside of the envelope and the written appeal letter: *"Privacy Amendment Appeal"*. DCSA must receive appeals within 90 calendar days from the date of this letter. Your written appeal letter should include the reasons for the appeal. Include with your appeal letter a copy of your original request and this response letter. Please reference tracking number DCSA-M 26-05060.

You also may seek dispute resolution services from the FOIA Public Liaison via e-mail at dcsa.quantico.hq.mbx.foia@mail.mil, or by calling (878) 274-4411. Alternatively, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between

PRIVACY ACT INFORMATION
In compliance with the Privacy Act of 1974, this information is Personal Data and must be protected from public disclosure.

FOIA requesters and federal agencies as a non-exclusive alternative to litigation. You may contact OGIS in any of the following ways or refer to their website: https://www.archives.gov/ogis.

| | |
|---|---|
| U.S. National Archives and Records Administration | Phone: 202-741-5770 |
| Office of Government Information Services | Toll-Free: 1-877-684-6448 |
| 8601 Adelphi Road – OGIS | Fax: 202-741-5769 |
| College Park, MD 20740-6001 | Email: ogis@nara.gov |

We hope this information is helpful and appreciate the opportunity to assist you in this matter.

Sincerely,

J. Greene Digitally signed by J. Greene

Joy F. Greene
Supervisory, Government Information Specialist
FOI/P Office for Trust Decision (Adjudications)



PRIVACY ACT INFORMATION
In compliance with the Privacy Act of 1974, this information is Personal Data and must be protected from public disclosure.

M-2

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT N

N-1 through N-3

Outlook

## Amendment Appellate Authority Request to Appeal

**From** John Zedaker <zedakerj@gmail.com>
**Date** Wed 4/8/2026 6:41 PM
**To** DCSA MCB Quantico HQ Mailbox FOIA <dcsa.quantico.hq.mbx.foia@mail.mil>

2 attachments (229 KB)
00 DCSA Response (26-05060).pdf; ATT00001.htm;

Hello,

I would like to submit a request to appeal the record amendment decision on 4/7/2026 in DCSA-M 26-05060. I have attached that relevant communication here.

The decision indicated that the request indicated a "lack of factual documentation (32 CFR 310.7a) as it does not aid in outlining how the DISS record is not accurate, relevant, timely, or complete without your requested corrections"

I appeal this determination because the evidence that I provided with my amendment request does clearly and unambiguously show that the DISS record is not accurate or complete and that Sierra Nevada Corporation submitted false information and concealed material facts in their submission to DCSA.

The evidence I provided in my amendment request were the following documents:

SNC_MFR_Evidence_By_Timeline_Method.pdf document detailing how evidence submitted contradicts SNC's submission to DCSA using evidence timeline methodology
DCSA_SNC_MFR_Breakdown_Zedaker.pdf document detailing how evidence submitted contradicts SNC's submission to DCSA
IG_emails.pdf document containing emails showing SNC's submission to DCSA was not truthful
Post_Firing_Email_Thread.pdf document containing emails showing SNC's submission to DCSA was not truthful
Tim_Woods_Text_5112024_1_small.pdf document containing text message that contradicts SNC's submission to DCSA
Tim_Woods_Text_5112024_2_small.pdf document containing text message that contradicts SNC's submission to DCSA
Parker_Teams_Messages_1.pdf document containing TEAMs messages that contradict SNC's submission to DCSA
Parker_Teams_Messages_2.pdf document containing TEAMs messages that contradict SNC's submission to DCSA
Parker_Teams_Messages_3.pdf document containing TEAMs messages that contradict SNC's submission to DCSA



N-1

Parker_Teams_Messages_4.pdf document containing TEAMs messages that contradict SNC's submission to DCSA

That evidence includes emails, texts, and TEAMS messages that clearly show Sierra Nevada Corporations submission was intentionally false, misleading, and concealed material facts.

At various times in trying to address this matter I have been told that NISPOM and SEAD are the relevant documents which Sierra Nevada Corporation was required to comply with in their submission.

If it was NISPOM then I believe this was the relevant language within that document:

***"Employees desiring not to be processed for a national security eligibility determination or not to perform classified work.*** Contractors will report instances when an employee no longer wishes to be processed for a determination of eligibility for access to classified information or to continue having access to classified information, and the reason for that request."

The language "and the reason for that request" is not optional language or language that exists for no reason. I did request to debrief from a SAP while fulfilling my responsibilities as Program Manager (the senior SNC SAP authority) when a Sierra Nevada Corporation Senior Vice President took actions that prevented me from carrying out my legal responsibilities of the PM position, and took actions that were not compliant with SAP rules which I as the SAP PM would be responsible for. The evidence that I provided clearly shows this and because the truthful "reason for that request" were problematic for Sierra Nevada Corporation they did not truthfully report them as NISPOM requires. Accurately reporting those reasons would have exposed non-compliant actions on the SAP by the Senior Vice President as well as two SAP Security Manager's who knowingly allowed him to do things on the SAP that they knew (as evidence I provided shows) to be non-compliant with SAP rules. The evidence I provided also shows that SNC's added claims that I had taken uncoordinated vacation or accessed the SCIF in a non-compliant manner were also false or greatly misleading. Additional evidence in SNC's possession (SCIF access logs between Nov 2023 - May 2024 and SNC PTO approval IT artifacts)

If the SEAD was the relevant document then it is less clear to me what they claimed was the driving language of their report but I imagine it would be one of these 3:

**"An unwillingness to comply with rules and regulations or to cooperate with security requirements"**

-The evidence I provided showed that, in fact I was the one trying to comply with the SAP CONOPS requirements and faced resistance from SNC personnel in doing so. Mainly the Senior Vice President but the evidence I provided also showed that both SAP security managers also knew the Senior Vice President's actions were not compliant with SAP rules yet they were reluctant to push back on his non-compliant actions due to his seniority outside of the SAP

**"Any activities that raises doubts as to whether covered individual's continued national security eligibility is clearly consistent with the interests of national security"**

-The evidence that I provided shows that SNC's reporting concealed material facts and intentionally misrepresented events in order to conceal events from the USAF and DCSA. That evidence also shows there was no doubts that could be justified if that is what SNC is claiming.

**"Misuse of U.S. Government property or information systems"**

-If SNC claimed this reporting requirement was somehow relevant given their claim that I accessed the SCIF improperly, the evidence I provided shows that this was extremely misrepresentative and untrue. Additionally the SNC SCIF logs between Nov 2023 - May 2024 would further show that this was a false claim by SNC in attempt to cover up events from the USAF and DCSA

Thank you for the opportunity to appeal the amendment decision and address the false reporting of Sierra Nevada Corporation. Regardless of what NISPOM or SEAD element was used to justify the report, the report by SNC was intentionally false, driven by nefarious and retaliatory reasons, and the evidence that I provided clearly shows this. I believe such false reporting justifies adjusting my record and taking corrective actions to ensure no future cleared personnel are subject to the impact of similar false reporting and breach of trust by Sierra Nevada Corporation.

V/R

John Zedaker

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT O

O-1 through O-15

27 April 2026

To: DCSA Representative
From: Mr. John Zedaker
Subj: Sierra Nevada Corporation Facility Security Officer's NISPOM Reporting

**PURPOSE**

As discussed with DCSA personnel in early April 2026, I write to report official communications by a Sierra Nevada Corporation (SNC) Facility Security Officer (FSO) to DCSA in May of 2024 related to me that intentionally did not comply with NISPOM reporting requirements, willfully contained false and misleading statements, and concealed material facts. I believe those communications were a corrupt abuse of power and betrayal of the governments trust in a person holding security authorities in a contractor environment. With this report I also submit, or provide reference to the location of, significant evidence that corroborates the claims made about the FSO's intentional non-compliant reporting to DCSA.

**SPECULATION OF INTENT**

While true motivations are known only to the SNC FSO, my best speculation of intent, having significant familiarity with the personnel and factors involved, are that the non-compliant reporting by the FSO was motivated by desires to conceal events and details from USAF and DCSA authorities that would reflect negatively on SNC, place an SNC government contract at risk, and expose non-compliant actions on a USAF program by an SNC Senior Vice President (SVP) and 2 SNC Security Managers, including the FSO.

**REPORTABLE EVENT SUMMARY**

The referenced evidence documents contain significantly more details on the events but a high level summary is provided here. I, as Program Manager (PM) and senior designated authority on a USAF Special Access Program (SAP), encountered actions by an SNC SVP (Mr. Tim Woods) which were not compliant with USAF program rules. Both SNC Security Managers on that program, including the FSO, made statements and took actions (shown in evidence) that indicated that they also were fully aware that what the SVP was doing was not compliant with USAF program rules and that the SVP was undermining and wrongfully preventing the designated SAP PM from executing the legal responsibilities of that position (those responsibilities detailed in the USAF SAP rules along with the severe legal consequences to the PM and Security Managers if found to have allowed non-compliant activities on the SAP). I engaged with the SVP over several weeks informing him of why his actions were non-compliant with USAF SAP rules, why his actions prevented me from executing my legal responsibilities on the program, and why his actions were against the determinations of the

SAP Security Managers. Several of these communications (provided in evidence) qualified as protected DoW whistleblower disclosures of wrong-doing to a supervisor or direct chain of command. When unsuccessful in compelling compliant behaviors from the SVP I made multiple requests to be replaced as PM by someone who felt what the SVP was doing was compliant and remain on the program doing my primary work of operations analysis. All requests to be replaced as PM by someone who felt the SVPs actions were compliant were denied by the SVP. After exhausting all other options to resolve the matter, including taking vacation to allow the SVP the maximum amount of time to possibly alter his non-compliant actions, I requested to debrief from that program so that I did not participate in non-compliant activities, so that I did not hold a position of trust with the USAF (SAP PM) that I was being prevented from executing properly, and so that I was not legally responsible for the actions of an SVP on the SAP who indicated a lack of interest or intention of complying with the USAF SAP rules.

**NISPOM REPORTING REQUIREMENT**

There are various requirements of individuals with security clearances and of an FSO of a certified SCIF to report security events in a truthful and transparent manner that are applicable to the events here. However the following NISPOM requirement is what the FSO indicated to AFOSI drove their submission to DCSA so that is the focus of my contention that the FSO intentionally did not comply with the requirement: *"Contractors will report instances when an employee no longer wishes to be processed for a determination of eligibility for access to classified information or to continue having access to classified information, and the reasons for that request"*

The requirement of the FSO to report the "reasons" for any request not to do specific classified work is not optional, nor is that wording superfluous. The language indicates that the reasons for a person requesting not to do specific classified work are a critical element to any report of such an event. It is also meant to ensure that such information is appropriately considered by DCSA and other entities mentioned in NISPOM (such as AFOSI in this case) when making decisions related to the cleared personnel that is the subject of the FSO's report. The FSO's requirement to truthfully and transparently provide this information is unambiguous and without exception. Intentionally withholding, concealing, or misrepresenting information relevant to those reasons prevents DCSA and other government entities from effectively evaluating such incidents and is corrupt behavior by an FSO.

**CONTENTION SUMMARY**

Once it became apparent that I was going to maintain my ethical and legal responsibilities as SAP PM and not play-ball with wrong-doing, SNC personnel including Ms. Deena Hartell (SNC SAP Security Manager), Mr. Lloyd "Parker" Francis (SNC SAP Security

Manager and FSO), and Mr. Tim Woods (SNC Senior Vice President) took steps in collusion to try and prevent government authorities from becoming aware of what had transpired, and to falsely craft a narrative that painted my actions as PM in trying to address wrong-doing as odd, erratic, and a security concern. The FSO, in particular, abused the trust and authority granted him as the FSO of a certified SCIF and corruptly made reports of the incident to DCSA and AFOSI that he knew were not truthful, were misleading, concealed of material facts, and did not comply with NISPOM reporting requirements. The FSO's requirement to truthfully and transparently report the reasons for such a reportable event are absolute regardless of whether such reporting would reflect poorly on the FSO or other SNC personnel.

*Note that, while I believe Mr. Francis was very likely the designated FSO, because the SNC security personnel had multiple titles and responsibilities and the SNC FSO report to DCSA that I received via FOIA had the FSO name redacted, then I can not say with 100% certainty that he held that title. This submission is applicable to whoever was the designated FSO and submitted the report to DCSA, as regardless of who that was, they would have access to all the information described here. However if Mr. Francis was indeed the FSO who submitted the DCSA report then some of his statements provided in the various evidence which completely contradict that communication to DCSA are extremely egregious, indicative of corrupt intent, and willful abuse of his authority as FSO.

In addition to attempting to obfuscate from government authorities the reasons that I requested to debrief from the USAF program, the FSO made several false and misleading statements in his reporting to authorities about my character and behavior. These were apparently designed to inspire suspicion and lessen the trust of the government in me and what the FSO anticipated I might communicate to the government about the events, and to further distract authorities from discovering what truly transpired on the USAF program. These false and misleading statements included insinuations that I had accessed the SCIF improperly, had taken unexplained and uncoordinated PTO, and had been working when I was not scheduled to work. Each of these accusations were obviously absurd when full details are known (as detailed later) and seem to reflect the FSO's high comfort level with false reporting, abusing his power as a trusted security professional to paint whatever narrative he wanted, desire to insinuate wrong-doing where he knew none was occurring, lack of concern with ever being held accountable for such corrupt actions, and dereliction of his FSO reporting responsibilities.

**SPECIFIC CORRUPT REPORTING AND EVIDENCE AVAILABLE THAT REVEALS IT**

(1) In an attempt to conceal events from government authorities, the FSO failed to meet the NISPOM requirement to truthfully and transparently report key elements of the reasons that I requested to debrief from the USAF Program which should have, at a minimum, included:

(A) An SNC SVP had directed SAP personnel to do things which were not compliant with the SAP rules and when I engaged the SVP, as my SAP PM position responsibilities required me to do, over the course of a month trying to handle the issue at the lowest level and alter his non-compliant behaviors, I was unsuccessful in resolving the issue. [Evidence: IG_emails.pdf and the various TEAMS message documents clearly show this in a variety of areas, including, most notably, statements by both SAP Security Managers, Mr. Francis and Ms. Hartell, indicating they knew what the SVP was directing personnel to do was not compliant with the SAP rules]

(B) An SNC SVP was wrongfully undermining and preventing the designated SAP PM, me, from executing my legal responsibilities of the PM position and abusing the authorities of his SVP position of power outside the SAP to direct SAP personnel to not comply with SAP PM tasking and directions. When I engaged the SVP over the course of a month to compel him to alter his actions, I was unsuccessful in resolving the issue. [Evidence: IG_emails.pdf and the various TEAMS message documents clearly show this in a variety of areas, including, most notably, statements and actions by both SAP Security Managers, Mr. Francis and Ms. Hartell, indicating they knew that the SVP was taking non-compliant actions in directing actions on the SAP counter to the designated PM's instructions, but were too intimidated by the SVP to stand up to him.]

(C) After being unsuccessful in compelling the SVP to stop preventing me from being able to execute my legal responsibilities as SAP PM, I requested multiple times to step down and be replaced as PM (it was not what I was hired to do nor my primary work at SNC) by someone who felt that what the SVP was doing was compliant. Each of these requests was denied by the SNC SVP who was forcing me to remain as PM while simultaneously preventing me from being able to execute my legal responsibilities as PM to ensure compliant behaviors on the SAP and maintain to position of senior authority of it. [Evidence: IG_emails.pdf clearly show multiple attempts by me to be replaced in the SAP leadership positions and remain on the SAP doing my primary work, and that each attempt was denied my the SNC SVP. They also indicate full awareness of these efforts and reasons for them by both SAP Security Managers, including the FSO] [Note: While the FSO report to DCSA does provide some indication that I attempted to step down as PM, it tactically leaves out all of the important context, in an attempt to insinuate it as a concerning behavior rather than what it actually was]

(2) In a blatant attempt to conceal events that reflected negatively on the FSO and other SNC personnel, the FSO intentionally made a grossly misleading statement in his report that withheld key information stating *"On 17 April 2024 John Zedaker (Subject) sent Parker Francis (redacted) a Teams message discussing his intent to debrief Dominic Pena (redacted) due to the Subject's perceived understanding of Pena's (redacted) role and his strict interpretation of the program CONOPS"*. This statement, highly tailored to conceal material context from the

government entities that he was reporting to, reveals a clear intent to deceive when it is considered that the FSO was fully aware of all of the following:

(A) On 10 April 2024 Ms. Deena Hartell in her role as SAP Security Manager, with Mr. Francis copied due to his role as Assistant SAP Security Manager, had been the person to initially inform Mr. Zedaker (because he was SAP PM) that both Mr. Dominic Pena and Ms. Sheryl Piko needed to be debriefed from the program in order to be compliant with the SAP CONOPS which had strict requirements on personnel access in order to prevent defense contractor companies from misusing program access. [Evidence: This 10:36am email on 10 April is available in IG_emails.pdf, the requirements of personnel access as well as the PMs and SAP Security Managers responsibilities to ensure only personnel who met USAF requirements are accessed to the program are available in the classified program CONOPS and CONOPS addendum. The specific language in the CONOPS that required both Ms. Piko and Mr. Pena to be debriefed from the program due to their new roles is discussed in the signed, classified MFR that I detailed SNC non-compliant activities that I left in the SNC safe]

(B) On 11 April 2024 I responded to Ms. Hartell's email, with Mr. Francis copied, and indicated that after reviewing the CONOPS I concurred with her recommendation and directed both Ms. Piko and Mr. Pena to be debriefed because their new roles and responsibilities with the company no longer met the requirements of the USAF CONOPS for access to that particular SAP. [Evidence: This 8:45am email on 11 April is available in IG_emails.pdf]

(C) The TEAMS conversations on 17 April between myself and Mr. Francis that the FSO uses a select snippet of in his report, was actually an extended discussion between myself and Mr. Francis about why the 11 April direction to debrief both individuals hadn't been carried out by the FSO yet given that, once it was determined that an individual did not have a need for SAP access anymore, government security expectations are that the individual be debriefed as expeditiously as possible. In this discussion Mr. Francis indicated that the SVP was, without informing the SAP PM, directing SAP Security not to comply with the SAP PM directions. Mr. Francis further indicated that he knew that the SVP was not authorized to undermine the SAP PM in that manner, Mr. Francis was uncomfortable with what the SVP was doing, and that Mr. Francis was firmly of the opinion that both Mr. Pena and Ms. Piko needed to be debriefed in order to be compliant with the USAF SAP rules. [Evidence: The entirety of the TEAMS conversation exchange available in Parker_Teams_Messages_1-4.pdf confirms this information.]

(D) The FSO reporting that focuses on the debrief of one individual conceals the true and larger issue that an SVP was preventing required debriefs of multiple personnel who no longer met the SAP CONOPS requirements. The FSO was also fully aware that

I (as PM) and SAP Security Managers (including the FSO) had communicated to the USAF customer between February 2024 and April 2024 that a review of SAP personnel by the SAP leadership team had revealed that actions needed to be taken at SNC to improve compliance with the SAP requirements for personnel to have access to the SAP. In that time period and as a part of that compliance improvement effort, roughly 5-10 SNC personnel were reassigned to different different billets on the SAP by myself and the SAP Security Managers in order to comply with SAP CONOPS billet rules. An additional 3 SAP SNC personnel had been debriefed from the SAP in roughly March 2024 timeframe as they were determined by me and the SAP Security Managers to no longer meet the requirements stated in the USAF SAP rules for SAP access. All of these actions had been communicated to the USAF customer via VTC's and in the end of March quarterly report. The USAF customer, SAP PM (me), and 2 SAP Security Managers (including FSO) were all in agreement on these actions. The intent to debrief Ms. Piko and Mr. Pena for the same reasons was also similarly communicated to the USAF customer without issue. It wasn't until the SNC SVP learned that I had directed the debrief of Mr. Pena and Ms. Piko, based on SAP Security Manager recommendation, that issues emerged. The SNC SVP immediately, without the authority to do so, and without engaging with the SAP PM, directed SAP Security Managers not to debrief both individuals and this led to the issues that emerged leading to me requesting to debrief. The FSO had full awareness of all of these complexities yet reported an oversimplified and misleading statement in order to conceal and mislead the government authorities on the matter. [Evidence: The classified MFR left in the SNC safe, numerous email exchanges in IG_emails.pdf, and the classified end of March quarterly program report to the USAF all confirm these details.]

(3) In attempt to craft a false narrative to government entities that concealed events that would have reflected poorly on the SNC SVP and FSO, the FSO report to DCSA intentionally misrepresented my roles and responsibilities as PM on the SAP. Most notably:

(A) Stating that I had a *"perceived understanding"* of Mr. Pena's (redacted) role. *"Perceived understanding"* is wording that is non-sensical but, to the extent that is used to try to imply that I was directing actions related to Mr. Pena which were falsely informed, this insinuates that anyone at SNC had the authority to override a SAP PMs directions if they felt he was misinformed. They did not. If anyone, including an SNC SVP felt that the SAP PM may not fully understand someone's role then they could engage with the PM to attempt to change the PM's understanding, but they were not authorized to override the PM. The FSO was very aware of this. In addition, Mr. Francis, had himself stated in his TEAMS messages to me that Mr. Francis also independently knew that Mr. Pena needed to be debriefed from the SAP due to his new role and the SAP access requirements. For Mr. Francis to then insinuate in his

communication to DCSA that Mr. Pena should not have been debriefed and that I as the PM was wrong in that action, reveals corrupt intent given Mr. Francis's previous statements on the matter and knowledge of the PM's authority and responsibilities on the SAP. [Evidence: The entirety of the TEAMS conversation exchange available in Parker_Teams_Messages_1-4.pdf and the classified SAP CONOPS show these things to be unambiguous and clear.]

(B) The FSO used language in his report to DCSA such as *"Subject indicated he will request to be debriefed if Tim Woods (redacted) decided against his guidance to debrief a (redacted, possibly Pena) individual"*. The FSO intentionally used language that conceals that I was the designated senior authority on the SAP as SAP PM. The SAP PM does not provide "guidance" to an SNC SVP on SAP decisions nor is the SAP PM making recommendations to an SNC SVP, where the SNC SVP is the decision-maker on SAP activities. Mr. Tim Woods, the SNC SVP, was my supervisor outside of the SAP and considered my functional manager in regards to approving time cards and general work evaluations, but this supervisor role did not extend to specific projects and definitely did not mean he had some kind of "supervisor PM" authority on the SAP. The USAF designates the SAP PM as having senior authority and responsibility intentionally so that they can then hold the PM accountable for SAP activities and no SNC SVP had the authority to override those decisions. An SNC SVP did have the authority to replace a SAP PM though if they felt his decisions or interpretations were poor. The FSO's was very aware of this, as he indicated in his TEAMS messages, yet he used language in his report to government entities to try and obscure this. Additionally the FSO attempts to imply in his reporting that my possible need to debrief, which had been discussed with both Mr. Francis and the SNC SVP multiple times (and before the timeframe that the FSO indicated in the FSO report) was based on something other than the fact that an SNC SVP was preventing me from executing my responsibilities as PM, was directing SAP personnel to do things that were against the SAP CONOPS and SAP Security Managers guidance, and was simultaneously preventing me from stepping down from the PM position. [Evidence: The entirety of the TEAMS conversation exchange available in Parker_Teams_Messages_1-4.pdf, the program CONOPS descriptions on roles and responsibilities of the PM position in particular, and multiple email exchanges between myself and Mr. Woods all confirm this.]

(4) In attempt to insinuate security concerns and erratic behaviors by me, the FSO intentionally made false insinuations that I accessed the SCIF in an "odd" and improper manner. This is an absurd abuse of his position as a government trusted security entity and was only made after I had made protected disclosures about wrongful behaviors by the SVP, tried for weeks to address the wrong-doing with the SVP, and immediately after removing all of my personal items from the SCIF, making it very clear that I would not "play ball" with what the SVP was trying to

pressure me to do. This reporting by the FSO is further revealed to be deceptive and corrupt by the following:

(A) Since briefing onto the SAP in Nov 2023 I had been given trusted open/close access to the SCIF specifically to have the authority and ability to access the SCIF outside of standard business hours when security was not onsite to do so. [Evidence for this includes: SNC SCIF Records as well as through implication of the FSO's reporting in stating that I had the ability to access the SCIF independently]

(B) The SCIF was not a small room. It encompassed nearly the full basement of the building it was located in and contained upwards of 20 separate rooms. It was also my primary work location, where my desk was, and where I would conduct all of my work while onsite at the SNC facility.

(C) Throughout my time at SNC and specifically on the SAP from Nov 2023 - May 2024 I consistently worked many evenings and weekends in addition to "9-5" hours as well driven in large part by my ability to set my own schedule and my workload which included three senior level positions (the one that I was hired for, Operations Analysis Lead, and two additional, SAP PM and SAP CE, that I was asked to take on over the course of time). The FSO had full knowledge of the fact that I did so frequently, never once requested me to coordinate those accesses with him, and never once indicated that any coordination was necessary or expected of me or any of the other cadre of personnel with open/close access to the SCIF. In fact, due to the fact that he knew I frequently worked nights and weekends, the FSO would commonly tell individuals, who did not have open/close access but wanted to work on a weekend or evening, to reach out to me to coordinate since I might be planning to work in the SCIF at the time they were looking to do so. [Evidence for this includes: SNC SCIF Records as well as SNC time card records would easily verify this.]

(D) Despite the voluminous amount of weekend and evening SCIF work that I had done while working at SNC, with full knowledge of the FSO, the FSO will have no records of counseling me about this or documenting any of them as a security incident/concern, which would conflict with his reporting to DCSA that such accessing was a supposed security concern. [Evidence for this includes: SNC SCIF Records would show no such disciplinary actions ever occurred]

(E) Despite the FSO reporting to DCSA that the access of the SCIF on 27-28 April 2024 was somehow, and suddenly, improper, the FSO still did not counsel me about doing so, engage with me at all about his supposed concerns, or document it as a security violation or incident in accordance with DODM 5205.07 or AFI 16-701 which would have required me to be informed and have an opportunity to appeal. Instead, inexplicably, the FSO chose not to inform the person that he felt was accessing the SCIF improperly that the FSO had such concerns. This is completely inconsistent with

required security practices if the FSO feels someone has committed a security infraction or violation. [Evidence for this includes: SNC SCIF Records would show no such disciplinary actions ever occurred]

(F) My particular access of the SCIF on 27-28 April was done in support of an all too frequent request of me to execute "urgent" work to support SNC business objectives. This work was even acknowledged, along with the fact that I had frequently worked weekends on similar projects, by the SNC SVP during our email discussions on 30 April when he states *"I appreciate the fact that you seem to have spend the weekend again supporting the guys downrange"*. Given that I gave up a weekend to do highly critical work for SNC, they also acknowledge I've commonly done so, and then the FSO turns around and tries to state that me doing so was a security concern is extremely corrupt and reflective of the core values of those involved in this incident. [Evidence for this includes: 9:59PM email on 4/30/2024 from Tim Woods to John Zedaker contained within IG_emails.pdf as well as SNC SCIF Access records from Nov 2023 - May 2024 confirm this]

(5) The FSO intentionally made false representations and insinuations regarding me working when I was not scheduled to. This is a highly misleading statement by the FSO designed to imply "odd" or erratic behaviors by me in support of the FSO's efforts in his reporting to conceal activities and paint a false narrative to government entities.

(A) As a senior salaried at SNC I set my own work schedule with the responsibility to ensure I attended all necessary daily events and did what was necessary to complete my work and responsibilities. I commonly worked during "9-5" hours, evenings, and weekends. I was available at all times of the day, particularly since I reported directly to a Senior Executive who expected to have the ability to reach out and connect at any time on emergent issues and concerns. Where as some employees at SNC had expected 9-5 hours, this was definitely not the case for me or other similar senior personnel. My time card which logged when I worked would fluctuate greatly from day-to-day and reflect a flexible work schedule and frequent weekend work and even holiday work. This was no different than any other senior level position at SNC. The FSO was well aware of this but intentionally chose to imply otherwise which speaks to his overall motivations in deceit of government entities. [Evidence for this includes: SNC timecard logs from Aug 2023 - May 2024 and SCIF access records from Nov 2023 - May 2024, several references to weekend work in my discussions with both Mr. Woods and Mr. Francis in IG_emails.pdf and in Parker_Teams_Messages_1-4.pdf]

(B) At various places in the emails and TEAMS messages provided in the references, my common work of weekends, etc. is casually mentioned in discussions between myself, Mr. Francis, and Mr. Woods. [Evidence for this includes: IG_emails.pdf and Parker_Teams_Messages_1-4.pdf]

(6) The FSO intentionally made false representations and insinuations regarding me taking "uncoordinated" vacation. This was a blatant lie as my vacation from April 30 - May 12 2024 was fully coordinated and followed all SNC coordination processes as revealed by:

(A) Vacation request was submitted into SNC's PTO request application and approved by my supervisor, Mr Tim Woods, prior to my initiating the vacation. [Evidence for this includes: SNC IT artifacts from their PTO approval system would confirm]

(B) Prior to going on vacation I had also taken steps to ensure that two of the members of my team, Justin Tomasetti and Paul Kovacic, were prepared for my absence in regards to two events that they would have while I was on vacation. [Evidence to confirm this would have to come from them or SNC email artifacts as I did not print these out for the IG when I was collecting emails as I did not see them as relevant]

(C) While on vacation I continued to respond to emails and work with members of my team as well as discuss the SAP compliance matter with the SNC SVP. [Evidence for this includes: multiple emails between the SVP and myself between 29 April and 10 May 2024, available in IG_emails.pdf]

(D) In emails with the SNC SVP he indicated that he was aware of and had approved my vacation. [Evidence for this includes: 9:59PM email on 30 April 2024 from Tim Woods to John Zedaker contained within IG_emails.pdf]

(E) Email discussions between myself and Tim Woods from April 30 - May 10th reveal that he was very aware that I had taken vacation to allow more time to resolve the matter with him before the next time I had to engage with the USAF customer via VTC and confirm, as PM, that SNC activities on the SAP were compliant with their SAP rules. If I had not taken vacation I would have had to request to debrief prior to 30 April 2024 VTC. Taking vacation allowed for my hopeful resolution of the issue with Mr. Woods prior to the next customer VTC on 14 May 2024. The FSO was fully aware of all of these factors in the vacation that was taken but, again, chose to carefully frame his reporting to conceal the issue with the SVP and to paint the action as an erratic behavior. [Evidence for this includes: Full email exchange between myself and Mr. Woods on this matter is available in IG_emails.pdf]

(7) The FSO abused his authority as a trusted security representative to make an intentionally misleading security report to a redacted (8th line of the 4th paragraph in the FSO's report to DCSA) government security entity after I had started my approved vacation at the end of my workday on 29 April 2024. This report seemed spurred by me removing my personal items from the SCIF in anticipation of having to debrief upon my return from vacation after over 3 weeks of failing to address non-compliant behaviors of the SVP on the SAP and being given no other options but to request to debrief if I felt I was being prevented from complying with my legal responsibilities as SAP PM. This removal of personal items from the SCIF seemed to spur panic in the SVP and FSO in regards to exposing unfavorable activities and so the FSO

apparently tried to use his ability to claim security concerns about me in order to craft an alternative narrative to the truth to government entities. This reporting intentionally insinuated wrong-doing where the FSO knew there was none, specifically:

(A) Saying such reporting was justified by "odd hours" I had been working despite the FSO being fully aware that my SCIF access was fully consistent with all previous accessing of the SCIF since Nov 2023 which the never had a concern about, and consistent with the protocols and responsibilities of my trusted SCIF open/close access. [Evidence for this includes: SCIF Access logs between Nov 2023 - May 2024]

(B) Choosing to word my removal of personal items from the SCIF in a more suspicious sounding manner of "cleared out his office space and retrieved all personal belongings". The FSO knew I was not required to have personal items in the SCIF, and he also knew removing items was prudent given the 3 weeks of discussion we had regarding how I may need to debrief from the SAP, which would cause me to lose access to my personal items if they were still in there, if the SVP did not change his non-compliant actions. Also the FSO indicated that I had removed "all items" when I had not. I had left pictures of my kids and a few small items that I could carry out in a single trip which I anticipated would be the final debrief. I ended up removing those final items once I returned to do pass down work on 11 May 2024 and discovered that the FSO and SVP were desperately trying to craft a narrative that I had been doing something wrong on the SAP. [Evidence for this includes: Multiple emails in IG_emails.pdf and the entirety of the TEAMS message exchanges in Parker_Teams_Messages_1-4.pdf show the FSO had full awareness that things were leading towards a probable need to debrief given what the SVP was doing on the SAP]

(C) Indicating that I had worked an "abbreviated Friday" on 26 April when I did not have standard work hours at SNC and had the freedom to set my own schedule. There was nothing unusual about my Friday work, especially when factoring in I would be working an urgent project request on the weekend (27-28 April). [Evidence for this includes: SNC time card records]

(D) Reporting my entering the SCIF and working over the weekend (27-28 April) as though they were unusual and unexplained when the FSO knew I had frequently and commonly worked weekends and that the work on the 27-28 April was for a known project request (as acknowledged by the SVP in email evidence). [Evidence for this includes: SNC SCIF Access records between Nov 2023 and May 2024 and multiple emails in IG_emails.pdf]

(E) Reporting that I had taken vacation that wasn't coordinated with leadership when, as discussed earlier, the FSO was aware that I had coordinated my vacation with the SVP and the SVP had approved it accordance with all SNC vacation coordination protocols.

[Evidence for this includes: SNC IT artifacts on PTO approvals as well as email between SVP and myself at 9:59pm on 30 April available in IG_emails.pdf]

(F) Not including in his insinuating reporting to the redacted government entity that, despite being on vacation I was still accessible and responsive via email and had multiple discussions with the SVP between 29 April 2024 and 10 May 2024. Many of those emails with the SVP during that time revealed that the SVP and FSO had full knowledge of the reasons for things which they communicated to the redacted government entity that they did not know (why SCIF items were removed, what work was being done on the 27-28 April, why I had taken vacation, etc.) [Evidence for this includes: Multiple emails between SVP and me between 29 April and 10 May 2024 in IG_emails.pdf]

(8) The FSO failed to include, anywhere in his report to DCSA, or reference communicating to the other entities mentioned in his report, that I had written an MFR, classified at the program level and left in the program safe, detailing the non-compliant actions of the SVP and how the CONOPS specifically forbid the misuse of government resources and program accesses that the SVP was attempting to do and pressure me to go along with. This was very relevant to the "reasons for debrief" that the FSO was required to report, the FSO had full awareness of it, was likely required to report it to multiple government entities including the program PSO, yet concealed the existence of this fact from his NISPOM reporting. [Evidence for this includes: Signed, classified MFR left in the SNC safe prior to my departure]

**ADDITIONAL INFORMATION THAT CONFLICT WITH FSO's REPORTING**

While the specific elements of the FSO's reporting described earlier best reveal the FSO's reporting intentionally failed to comply with NISPOM requirements and had corrupt intent to mislead the government, the following general statements are also highly indicative of the same when compared with what the FSO communicated in his reporting to DCSA:

(A) In August 2023 SNC hired me to fill their Operations Analysis Lead position, a senior level position reporting directly to a Senior Executive. This reveals the value that they placed in my work, leadership, judgement, and decision-making experience.

(B) After being cleared to the SAP for only 1-2 months SNC asked me to take on the responsibilities of the SAP Chief Engineer position (second most senior position on the SAP) in addition to my Operations Analysis Lead position and responsibilities, reflecting outstanding work performance at SNC and on the SAP and a high-level of trust in my decision-making by both SNC and the USAF customer.

(C) After only being cleared to the SAP for roughly 4 months SNC asked me to take on the responsibilities of the SAP Program Manager position (most senior position and authority on the SAP) in addition to my SAP Chief Engineer and Operations Analysis Lead positions and responsibilities, reflecting outstanding work performance at SNC

and on the SAP and extreme high levels of trust in my decision-making by both SNC and the USAF customer.

(D) I was singled out multiple times in staff meetings and in SNC Department meetings for outstanding work on various projects, leadership of personnel, and in turning around the performance on a SAP that had previously been underperforming. This reveals my value, impact, and excellent work performance was well-known at SNC.

(E) My background and experience includes over 10 years of active duty military service as a Naval Officer in highly classified environments and nearly 15 more years as a defense contractor in highly classified and SAP environments. My work in all of those roles was excellent and impactful to the U.S. Government and without security incident or any behaviors that the SNC FSO would falsely attempt to characterize as "odd", erratic, and of security concern once it became apparent that the issue with the SVP was going to lead to me needing to debrief from the SAP and expose undesirable actions by the SVP and FSO to government entities.

(F) At no point during my employment at SNC was I ever counseled on or informed by security personnel of any security concerns related to my work, working hours, SCIF accessing, or general behavior. This includes during my out-processing and firing for requesting to debrief that occurred on 13 May 2024.

(G) When I requested to step down from the SAP PM and CE responsibilities after informing the SNC SVP, in whistleblower protected disclosures, that what he was doing on the SAP was non-compliant and that my legal responsibilities as SAP PM meant I could not endorse his actions as compliant, the SNC SVP refused to replace me as PM or CE, reflecting that he had no security or behavior concerns since those would have made me an unsuitable candidate to continue to fill those positions of high trust.

(H) As late as May 9 2024 (after SNC's supposed security concerns) the SNC SVP was still indicating that he would not allow me to step down from PM responsibilities, reflecting that he had no security or behavior concerns since those would have made me an unsuitable candidate to continue to fill that position of extremely high trust and responsibility.

(I) On 23 April 2024 the FSO sent me a TEAMS message, knowing that the conflict with the SNC SVP was increasingly likely to lead to a need for me to leave the program, stating to me *"just want you to know, you saved this program. There are others that believe this as well."* I would contend that this is more reflective of the FSO's true opinions on my work, efforts to get the SNC SAP compliant with USAF rules, my personal character and behaviors on the SAP, and what was happening with the SNC SVP, than what was reported in the FSO's highly misleading reporting (I acknowledge likely pressured by the SNC SVP) to the DCSA. [Evidence for this includes: TEAMS message available in Parker_Teams_Messages_1-4.pdf]

**AVAILABLE CORROBORATING INFORMATION**

All claims and information in this submission to DCSA can be corroborated by the following evidence that is available and maintained by me, DoD/ODNI IGs, or SNC:

*IG_emails.pdf*

> **Description:** Collection of emails between Mr. Zedaker, Mr. Woods, Ms. Hartell, and Mr. Francis relevant to the events, provided to ODNI IG in 2024

*Parker_Teams_Messages_1.pdf*

> **Description:** Collection of TEAMS messages between Mr. Zedaker and Mr. Francis relevant to events, provided to ODNI IG in 2024

*Parker_Teams_Messages_2.pdf*

> **Description:** Collection of TEAMS messages between Mr. Zedaker and Mr. Francis relevant to events, provided to ODNI IG in 2024

*Parker_Teams_Messages_3.pdf*

> **Description:** Collection of TEAMS messages between Mr. Zedaker and Mr. Francis relevant to events, provided to ODNI IG in 2024

*Parker_Teams_Messages_4.pdf*

> **Description:** Collection of TEAMS messages between Mr. Zedaker and Mr. Francis relevant to events, provided to ODNI IG in 2024

*TW_Teams_Messages_1.pdf*

> **Description:** Collection of TEAMS messages between Mr. Zedaker and Mr. Woods relevant to events, provided to ODNI IG in 2024

*Tim_Woods_Text_5112024_1.pdf*

> **Description:** Collection of text messages between Mr. Zedaker and Mr. Woods relevant to events, provided to ODNI IG in 2024

*Tim_Woods_Text_5112024_2.pdf*

> **Description:** Collection of text messages between Mr. Zedaker and Mr. Woods relevant to events, provided to ODNI IG in 2024

*Post_Firing_Email_Thread.pdf*

> **Description:** Collection of emails between Mr. Zedaker and Mr. Francis relevant to the events, provided to ODNI IG in 2024

*Aug_Memory_Dump_signed.pdf*

> **Description:** A signed unclassified MFR related to relevant events provided to ODNI IG in 2024

*SNC_MFR_Evidence_By_Timeline_Method.pdf*

> **Description:** A detailed breakdown in timeline format of how various evidence conflicts with the SNC FSO's official reporting to DCSA

*Classified MFR left in SNC program safe along with highlighted program CONOPS*

> **Description:** A signed classified detailing of SNC wrong-doing and attempts to misuse government resources observed on the USAF program that was left in the SNC safe along with a highlighted version of the USAF program CONOPS connecting the SNC actions to the applicable rules that were not being followed.

Classified program CONOPS in effect in April 2024

> **Description:** Details PM legal responsibilities on the SAP,

*ODNI IG Investigators for Case # 24-1934-CO*

> **Description:** IG case has been on-going since 2024 and investigative staff themselves may have additional relevant independent evidence or information than referenced here

*SNC SCIF badging and access logs from Nov 2023 - May 2024*

> **Description:** Records in SNC possession which would reveal Mr. Zedaker consistent SCIF access history and reveal the FSO's claims of improper SCIF access by Mr. Zedaker to be blatantly false

*Classified SNC quarterly report to USAF customer in early April 2024*

> **Description:** Record showing that the FSO's reporting to DCSA on several program activities in question were not truthful

*SNC PTO approval system IT artifacts*

> **Description:** Records showing that the FSO's statements indicating that Mr. Zedaker had taken uncoordinated PTO were not truthful

*Nearly four hours of recorded and sworn interviews with IG personnel related to 2024 events*

> **Description:** Sworn statements to DoD IG personnel regarding the entirety of events that detail attempts by SNC personnel including the FSO to falsely frame events leading up to Mr. Zedaker's debrief from the SAP. The wave audio files were transferred to ODNI IG when the IG case started in May 2024 was transitioned to ODNI in Dec 2024.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT P

P-1 through P-13

DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
1137 BRANCHTON ROAD
BOYERS, PA 16018-0618

August 21, 2026

Mr. John Maywood Zedaker
189 Indigo Loop
Miramar Beach, FL 32550

**Re: Privacy Act Amendment Appeal of DCSA-M 26-05060 (APP26-00057)**

Dear Mr. Zedaker:

This is in reference to your April 8, 2026, appeal of the Defense Counterintelligence and Security Agency (DCSA) Freedom of Information and Privacy Office for Adjudications (FOI/P AVS) decision denying your amendment request for correction of the Joint Access Database Environment (JADE) record and Personnel Security Program (PSP) record related to your May 13, 2024 debrief from a Special Access Program (SAP) while working for the Sierra Nevada Corporation, to reflect that you were not "debriefed for cause" and that all adverse information should be removed. The FOI/P AVS is now known as the Trust Decisions (Adjudications) (TD[A]). An additional review of your submitted documentation, and consideration of your arguments, determines that the original decision denying your request for amendment is affirmed.

In your February 20, 2026, amendment submission packet to TD(A) you provided the following documentation in support of your request:

1) An attachment labeled, "SNC_MFR_Evidence_By_Timeline_Method.pdf."
2) An attachment labeled, "DCSA_SNC_MFR_Breakdown_Zedaker."
3) An attachment labeled, "IG_emails.pdf."
4) An attachment labeled, "Post_Firing_Email_Thread.pdf."
5) An attachment labeled, "Tim_Woods_Text_5112024_1_small.pdf."
6) An attachment labeled, "Tim_Woods_Text_5112024_2_small.pdf."
7) An attachment labeled, "Parker_Teams_Messages_1.pdf."
8) An attachment labeled, "Parker_Teams_Messages_2.pdf."
9) An attachment labeled, "Parker_Teams_Messages_3.pdf."
10) An attachment labeled, "Parker_Teams_Messages_4.pdf."

On April 7, 2026, the TD(A) responded to you with a letter denying your request stating that the supporting documents you had submitted were unable to be used to amend your DCSA file as they *did not* prove that your records are not accurate, relevant, timely and/or complete (32 CFR § 310.7[a]). TD(A) further expressed that, in accordance with the Security Executive Agent Directive 3 (SEAD 3), your former employer, the Sierra Nevada Corporation (SNC), had a requirement to provide information related to your eligibility of employment into the Defense Information System for Security (DISS).

On April 9, 2026, DCSA received your appeal of TD(A)'s decision denying your request for amendment. You believe that the evidence you have provided does clearly and unambiguously prove that your DISS records are not accurate or complete and that SNC submitted false information and concealed material facts in their submission to DCSA. On April 28, 2026, you submitted a supplemental e-mail to DCSA and included a further attachment for consideration entitled, "DCSA_Statement_Zedaker_signed.pdf"

The arguments that you have raised on appeal, and the actions of the TD(A), are being considered "*de novo*" as this is the standard of review assigned to U.S. district courts under the FOIA. *See* 5 U.S.C § 552(a)(4)(B).

Pursuant to Department of War (DoW) regulations, the requester "should identify each particular record in question, state the amendment or correction that is sought, and why the record is not accurate, relevant, timely, or complete without the correction. . . . Factual documentation that is helpful to the DoW Component privacy officials should be submitted with the request." 32 CFR § 310.7(a). Disputed information should remain in a Privacy Act record, qualified by subsequent data, unless it represents a clear mistake of fact . . . which has been refuted by proven, uncontroverted evidence. *Hernandez v. Alexander*, 671 F.2d 402, 411 (10th Cir. 1982).

**Preliminary Matters**

On appeal, we reconsidered all the documentation you provided on February 20, 2026, in support of your amendment request and the addendum submitted by you on April 28, 2026. We also reviewed the prior response the TD(A) issued to you in relation to your original Privacy Act request for information under DCSA-M 25-12821. As it relates to your February 5, 2026, attachment labeled, "DCSA_SNC_MFR_Breakdown_Zedaker", you disclaim that you have not provided all evidence, but have referenced in various places Microsoft TEAMS messages, emails, text messages and other artifacts which directly contradict SNC's Memorandum for Record (MFR) statement to AFOSI/PJ and DCSA.

The onus is on the appellant to provide all relevant data for DCSA to make an informed decision, therefore consideration can only be placed upon your actual evidence provided along with your arguments in conjunction with that evidence. As the court found in *Subh v. Department of the Army, U.S. Army Records Mgmt. & Declassification Agency*, "[t]he Privacy Act allows an individual to seek amendment of a federal agency's records pertaining to him if those records are factually inaccurate, but . . . the Act may not be invoked to force an agency to rewrite history." No. 1:10cv33 (LMB/TRJ), 2010 WL 4961613 (E.D. Va. Nov. 30, 2010) (internal quotation marks omitted) (quoting *Reinbold v. Evers*, 187 F.3d. 348, 361 (4th Cir.1999).

**Request for Appeal**

In your April 8th appeal proposal, you provide an attachment dated February 5, 2026, "DCSA_SNC_MFR_Breakdown_Zedaker" which present your following arguments:

***Blatant Falsehoods in the SNC MFR***

*(1) **MFR indicates various details about a 25 April 2024 meeting between myself and CPSO Mr. Francis that were not truthful.***

**DCSA Response**: DCSA cannot independently verify your reference to "SNC IT Artifacts" as it is not included in your attached evidence. The supplemental documents you have provided, nor your above statements definitively refute the information in the official MFR as a part of your DISS file.

*(2) **MFR mentions a sudden "not coordinated with Subject's leadership" 2-week PTO.***

**DCSA Response**: DCSA cannot independently verify your reference to "SNC IT Artifacts" as it is not included in your attached evidence. Mr. Woods states in an e-mail to you on page 18 of your attachment "IG e-mails" that he approved your PTO request that was submitted to him but indicated that it was not pre-coordinated with him as he would have preferred. Your statement to the contrary does not overturn the official MFR in your DISS file as the MFR reflects the circumstances as described in Mr. Woods e-mail.

***Misrepresentations in the SNC MFR***

*(1) **The MFR indicated that Mr. Zedaker sent Lead CPSO Parker Francis (name was redacted) a TEAMS message on 17 April 2024 discussing intent to debrief from the SAP due to subjects perceived understanding of his PM (redacted) role and his strict interpretation of the CONOPS.***

**DCSA Response**: The MFR is a concise summary of all pertinent events and is not intended to be an inclusion of every ancillary element. A review of the TEAMS messages you provided indicate that the MFR does in fact reflect the essence of the reported discussion. The TEAMS messages, nor your statements above, refute the information in the official MFR as a part of your DISS file.

*(2) **The last and second to last lines of the first paragraph of the MFR intentionally oversimplified and misrepresented the facts related to my request to debrief and seemed to imply false authorities that a redacted SNC individual had to override and authorize PM actions on the SAP.***

**DCSA Response**: The MFR is a concise summary of all pertinent events and is not intended to be an inclusion of every ancillary element. A review of the TEAMS messages you provided indicate that the MFR does in fact reflect the essence of the reported discussion. The TEAMS messages, nor your statements above, refute the information in the official MFR as a part of your DISS file.

*(3) **Multiple times during the MFR indications were made that Mr. Zedaker accessed the SCIF at "odd hours" or off-hours, and entered SCIF when not scheduled to work, or accessed the SCIF in a non-compliant manner.***

**<u>DCSA Response</u>:** DCSA cannot independently verify nor has access to audit logs of the SNC SCIF. There is also no reason to believe that the reporting in the MFR of your requirement to first coordinate all non-traditional hour requests with your employer's security office for SCIF access is incorrect or unreasonable. Your statements above do not refute the information in the official MFR as a part of your DISS file.

***<u>Intentional Omissions in the SNC MFR</u>***

***(1) The MFR referred to an email sent on 23 April to Ms. Hartell, Mr. Francis, and Mr. Roscio, names were redacted in MFR, where I indicated a decision to step down as PM and CE of the SAP.***

**<u>DCSA Response</u>:** The MFR is a concise summary of all pertinent events and is not intended to be an inclusion of every ancillary element. A review of the "IG _emails" attachment you provided indicate that the MFR does in fact reflect the essence of the reported discussions. The IG e-mails, nor your statements above, change the nature of the information in the official MFR as a part of your DISS file.

***(2) Nowhere in the MFR was it mentioned that Mr. Zedaker had written a signed MFR classified at the program level, placed it in the program safe, and requested that SNC maintain that MFR throughout the IG investigation that Mr. Zedaker had requested on the matter.***

**<u>DCSA Response</u>:** In accordance with the Security Executive Agent Directive 3 (SEAD 3) SNC was directed by the U.S. Government Customer (USG) to submit all the appropriate information involving your debrief. The MFR is a summary of events that occurred and does not encapsulate the review of every document that may exist within SNC.

***(3) Nowhere in the MFR is it mentioned that there were text messages between Mr. Woods and Mr. Zedaker wherein Mr. Zedaker revealed he had become aware that Mr. Woods was trying to wrongfully frame his request to debrief, reiterating that Mr. Woods actions on the SAP were wrong and not consistent with CONOPS or SNC security personnel statements (Ms. Hartell and Mr. Francis) and indicating a full investigation of the matter was warranted.***

**<u>DCSA Response</u>:** In accordance with the Security Executive Agent Directive 3 (SEAD 3) SNC was directed by the U.S. Government Customer (USG) to submit all the appropriate information involving your debrief. The MFR is a summary of events that occurred and does not encapsulate the review of every interaction that may have occurred within SNC.

***(4) Nowhere in the SNC MFR is it indicated that Mr. Zedaker had provided Mr. Francis with a statement to the USAF PSO on 13 May 2024.***

**<u>DCSA Response</u>:** In accordance with the Security Executive Agent Directive 3 (SEAD 3) SNC was directed by the U.S. Government Customer (USG) to submit all the appropriate information involving your debrief. The MFR is a summary of events that occurred and does not encapsulate the review of every interaction that may have occurred within SNC.

***(5) Nowhere in the SNC MFR is it indicated that Mr. Woods made a personal phone call to USAF SAP leadership (his friends) during the firing (either right before or right after) and what was indicated during that call.***

**<u>DCSA Response</u>:** This statement is conjecture and cannot be verified by DCSA during this appeal process. SNC is required to report information in alignment with SEAD 3 and the MFR is only a synopsis of the events that occurred.

***<u>Other notable aspects about the MFR that speak to SNC deception</u>***

**<u>DCSA Response</u>:** In accordance with the Security Executive Agent Directive 3 (SEAD 3) SNC was directed by the U.S. Government Customer (USG) to submit all the appropriate information involving your debrief. Your arguments put forth above do not indicate falsehoods or misrepresentations by SNC as the MFR reflects the spirit of events reported and does not change the language in the MFR. SNC would not be required, at the behest of an individual, to include or report data not in alignment with SEAD 3.

In your April 8th appeal proposal, you provide an attachment dated February 10, 2026, "SNC_MFR_Evidence_By_Timeline" which presents your following arguments:

***<u>April 10</u>***

***Evidence: 8:42am email sent from JZ to DH, AR, and PF; Evidence: 10:36am email sent from DH to JZ, AR, and PF; Evidence: 10:55am email from JZ to DH, PF, and AR***

**<u>DCSA Response</u>:** This e-mail chain is deliberative regarding realignment of the SNC project and there is no indication of intentional omission of any underlying issue with Mr. Woods. As your supervisor, Mr. Woods would have the right to weigh in on any decisions affecting SNC personnel. Therefore, the MFR's reference to your interpretation is not invalidated.

***<u>April 11</u>***

***Evidence: 8:45am email sent from JZ to DH, AR, and PF***

**<u>DCSA Response</u>:** This e-mail exchange does not reveal any wrongful actions by Mr. Woods, nor does it attribute to your perceived actions taken by the SNC leadership. As your supervisor, Mr. Woods would have the right to weigh in on any decisions affecting SNC personnel.

***<u>April 15</u>***

***Evidence: 11:57am TEAMS message sent from PF to JZ***

**<u>DCSA Response</u>:** Review of this TEAMS message does not reveal that Mr. Woods had inserted himself as a PM. In an e-mail dated April 23, 2024, by Mr. Woods himself, that you submitted indicated that you were still considered both the CE and the PM on the project. Additionally, the TEAMS messages do not reveal that the security office would be aware of any issues regarding your debrief other than your mention of it during the conversation. The TEAMS messages do in fact reflect that the security office personnel were intent on following the proper protocols and chain of command.

***Evidence: 12:55pm TEAMS message sent from JZ to PF***

**<u>DCSA Response</u>:** Although your argument puts forth a date discrepancy, review of this TEAMS message does not change the content of the MFR as the information discussed in the TEAMS message is correct as indicated in the narrative of the MFR.

***Evidence: 2:54pm TEAMS messages sent from PF to JZ***

**<u>DCSA Response</u>:** Review of this TEAMS message does not show a misrepresentation of events, but rather that the security office was coordinating with both yourself as the PM and Mr. Woods your supervisor for input on the matter. As your supervisor, Mr. Woods would have the right to weigh in on any decisions affecting SNC personnel.

***<u>April 17</u>***

***Evidence: 8:44am TEAMS message sent from PF to JZ***

**<u>DCSA Response</u>:** Review of this TEAMS message does not indicate a misrepresentation of events, nor does it reflect the attributions you place on the security office official, nor does it refute the information contained within the MFR.

***<u>April 22</u>***

***Evidence: 8:20am email sent from JZ to BB, DH, and PF***

**<u>DCSA Response</u>:** In an e-mail dated April 23, 2024, by Mr. Woods himself, that you submitted indicated that you were still considered both the CE and the PM on the project. The MFR is intended to be an impartial construction of the relevant timeline of events and there is no indication in the evidence you have provided that alters the language in the MFR.

***Evidence: 5:32pm email sent from JZ to TW; Evidence: 5:39pm email sent from JZ to TW; Evidence: 9:40pm email from TW to JZ; Evidence: 10:20pm email from JZ to TW***

**<u>DCSA Response</u>:** In an e-mail dated April 25, 2024, by Mr. Woods himself, that you submitted reflects a desire from Mr. Woods to have the actions you were to take as PM be coordinated with him instead of decisions being made unilaterally without any oversight or input from Mr. Woods. There is no indication within the e-mails provided that Mr. Woods or SNC were non-compliant with the CONOPS or asking you to make specific decisions against the CONOPS.

***April 23***

***Evidence: 5:11am email sent from JZ to TW***

**DCSA Response**: In an e-mail dated April 23, 2024, by Mr. Woods himself, that you submitted reflects that he does not agree with your unilateral decision to step down from the CE/PM responsibilities and he was amicable to work with you through your decision regarding SNC personnel. There is no indication within the e-mails provided that the MFR is a misrepresentation of events nor does the MFR reflect any attribution of perceived undermining of your PM role.

***Evidence: 8:49am email sent from JZ to DH, AR, and PF; Evidence: 10:28am email sent from TW to JZ, DH, AR, and PF***

**DCSA Response**: Your supervisor Mr. Woods would be entitled to make employment decisions related to your position with SNC and would be within his right not to remove you from the program at his discretion. As noted in your MFR, you were not permitted to request a personal debrief as it would remove you from job eligibility.

***Evidence: 10:28am email sent from TW to JZ***

**DCSA Response**: Your supervisor Mr. Woods would be entitled to make employment decisions related to your position with SNC and would be within his right not to remove you from the program at his discretion. Your supervisor asking for you to communicate decisions with him does not reflect a confliction with the CONOPS nor is it unreasonable.

***April 25***

***Evidence: 7:21am email sent from JZ to TW***

**DCSA Response**: The SNC MFR does provide the reasoning for your request to debrief in the first paragraph beginning on April 17, 2024 which reflects your concerns for having your personnel decisions questioned by your supervisor.

***Evidence: 8:18am email sent from TW to JZ***

**DCSA Response**: There is no indication or evidence provided that shows that Mr. Woods wanted to assume your PM role responsibilities. Mr. Woods made it clear in his April 23, 2024, e-mail that you were to remain the CE/PM. Your supervisor Mr. Woods would be entitled to reverse the decisions of a subordinate as he stated a desire to be consulted about decisions prior to them having been made.

***Evidence: 10:51pm email sent from JZ to TW***

**<u>DCSA Response</u>:** The SNC MFR makes clear that job eligibility is contingent upon an individual not being debriefed. Discussions provided in your e-mail evidence confirm that you were to be assigned to the program as the CE/PM and to not be relieved of that position on your own personal accord, but by the decision of your supervisor Mr. Woods.

***<u>April 26 and April 30</u>***

***Evidence: 12:54am email sent from JZ to TW; Evidence: 9:59pm email sent from TW to JZ***

**<u>DCSA Response</u>:** The conversation between yourself and your supervisor Mr. Woods does not indicate that the proper procedures were followed by you in accordance with SNC's expectation for SCIF access. The SNC MFR reflects what SNC considers, as an organization, the appropriate avenue for requesting off-hours access to their SCIF.

***<u>May 2</u>***

***Evidence: 3:30am email sent from JZ to TW***

**<u>DCSA Response</u>:** The MFR is a report of all relevant events to include actions you would have taken when you were present in the SNC SCIF.

***<u>May 9</u>***

***Evidence: 7:41am email sent from TW to JZ***

**<u>DCSA Response</u>:** A review of the MFR shows no evidence of an option to remain on the program if an individual is debriefed.

***Evidence: 10:50am email sent from JZ to TW***

**<u>DCSA Response</u>:** The SNC MFR does provide the reasoning for your request to debrief in the first paragraph beginning on April 17, 2024, which reflects your concerns for having your personnel decisions questioned by your supervisor. A review of the MFR shows no evidence of an option to remain on the program if an individual is debriefed.

***<u>May 10</u>***

***Evidence: 12:26pm email sent from JZ to PF; Evidence: 11:54am (seems to be small error in outlook time as time is before the email that is being replied to, believe actual time was 12:54pm) email sent from PF to JZ***

**<u>DCSA Response</u>**: This e-mail exchange reveals that a scheduling change was requested, with which you agreed. This e-mail exchange does not add further attribution to your perceived events nor refute the information provided in the SNC MFR.

***Evidence 4:18pm text message from TW to JZ***

**<u>DCSA Response</u>**: A review of this text message shows an acknowledgement by your supervisor of your attempt to presumably call him by telephone and of a prior e-mail you sent. No further attribution can be assigned to his reply, and it does not invalidate the MFR of official events reported by SNC.

***Evidence 8:31pm email from JZ to PF***

**<u>DCSA Response</u>**: The conversation between yourself and Mr. Francis related to scheduling does not negate the need to follow proper SNC procedures. The SNC MFR reflects what SNC considers, as an organization, the appropriate avenue for requesting off-hours access to their SCIF.

***<u>May 11</u>***

***Evidence: 5:44pm text message sent from JZ to TW***

**<u>DCSA Response</u>**: This text message only reveals your further attempts to clarify the reasoning for your decisions and does not disprove any data within the SNC MFR.

***<u>May 12 and May 13</u>***

***Evidence: 10:00am email sent from JZ to PF, TW, DH and BangOne Angerman (HR Rep); Evidence: 9:55am email sent from JZ to PF***

**<u>DCSA Response</u>**: The SNC MFR does provide the reasoning for your request to debrief in the first paragraph beginning on April 17, 2024 which reflects your concerns for having your personnel decisions questioned by your supervisor.

***<u>May 16</u>***

***Evidence: 10:33am email sent from PF to JZ***

**<u>DCSA Response</u>**: There is no indication that SNC, through what is reported in the MFR and the e-mail threads you have provided, delayed forwarding your information to the parties responsible.

In your April 8th appeal proposal e-mail, you assert that the SNC's submission of information to DISS was intentionally false, misleading and concealed material facts as it relates to their requirement to provide information under the National Industrial Security Program Operating Manual (NISPOM) and SEAD.

***NISPOM Reporting Requirement***:

**DCSA Response**: The SNC MFR, and subsequent DISS screen provided to you as part of your Privacy Act request, is a reflection that SNC followed the proper reporting requirements for the reasoning behind your separation from your employer. DCSA's explanation of the other points you have raised above regarding the NISPOM have already been addressed under the "DCSA_SNC_MFR_Breakdown_Zedaker" and "SNC_MFR_Evidence_By_Timeline_Method" sections of this appeal determination.

***SEAD Reporting Requirement***

**DCSA Response**: The SNC MFR, and subsequent DISS screen provided to you as part of your Privacy Act request, is a reflection that SNC followed the proper reporting requirements for the reasoning behind your separation from your employer. DCSA's explanation of the other points you have raised above regarding SEAD have already been addressed under the "DCSA_SNC_MFR_Breakdown_Zedaker" and "SNC_MFR_Evidence_By_Timeline_Method" sections of this appeal determination.

In your April 28th appeal addendum, you provide an attachment dated April 27, 2026, "DCSA_Statement_Zedaker_signed", which present your following arguments:

***NISPOM Reporting Requirement and Contention Summary***

**DCSA Response**: The intention of an MFR is to provide a complete timeline of the totality of each step taken within the larger reporting requirement process. As it is intended to be a concise record, it is not and cannot be inclusive of each report, detail and process that occurred or of all records that were obtained. There is no evidence regarding what you have provided in your attachments, nor does the MFR itself suggest that any information was omitted, concealed or misrepresented.

***Specific Reporting***

**DCSA Response**: As addressed previously in this appeal response, the evidence you highlight does not refute the MFR nor does it lend any validity to the assertion of non-compliance by members of your leadership or security managers referenced. The information you provide in these sections are attributions to those individuals that are not supported contextually via the MFR or the evidence you provide.

***(1) In a blatant attempt to conceal events that reflected negatively on the FSO and other SNC personnel, the FSO intentionally made a grossly misleading statement in his report that withheld key information…***

**DCSA Response**: As addressed previously in this appeal response, the evidence you highlight does not refute the MFR nor does it lend any validity to the assertion of non-compliance by members of your leadership or security managers referenced. The information you provide in

these sections are attributions to those individuals that are not supported contextually via the MFR or the evidence you provide.

**(2) *In attempt to craft a false narrative to government entities that concealed events that would have reflected poorly on the SNC SVP and FSO, the FSO report to DCSA intentionally misrepresented my roles and responsibilities as PM on the SAP…***

**DCSA Response**: As addressed previously in this appeal response, the evidence you highlight does not refute the MFR nor does it lend any validity to the assertion of non-compliance by members of your leadership or security managers referenced. The information you provide in these sections are attributions to those individuals that are not supported contextually via the MFR or the evidence you provide.

**(3) *In attempt to insinuate security concerns and erratic behaviors by me, the FSO intentionally made false insinuations that I accessed the SCIF in an "odd" and improper manner…***

**DCSA Response**: As addressed previously in this appeal response, DCSA would not have access to these types of records from SNC and the evidence you have provided regarding conversations of your intentions to work in the SNC SCIF do not refute the MFR or the SNC policies and procedures required for their SCIF.

**(4) *The FSO intentionally made false representations and insinuations regarding me working when I was not scheduled to. This is a highly misleading statement by the FSO designed to imply "odd" or erratic behaviors by me in support of the FSO's efforts in his reporting to conceal activities and paint a false narrative to government entities.***

**DCSA Response**: As addressed previously in this appeal response, DCSA would not have access to these types of records from SNC and the evidence you have provided regarding conversations of your intentions to work in the SNC SCIF do not refute the MFR or the SNC policies and procedures required for their SCIF.

**(5) *The FSO intentionally made false representations and insinuations regarding me taking "uncoordinated" vacation. This was a blatant lie as my vacation from April 30 - May 12 2024 was fully coordinated and followed all SNC coordination processes…***

**DCSA Response**: DCSA cannot independently verify your reference to "SNC IT Artifacts" or other e-mails that are not included as part of your attached evidence. Mr. Woods states in an e-mail to you on page 18 of your attachment "IG e-mails" that he approved your PTO request that was submitted to him but indicated that it was not pre-coordinated with him as he would have preferred. Requesting to utilize PTO through an automated system is not the same as coordinating and communicating the intention through your supervisor. The above-mentioned information does not refute the MFR.

***(6) The FSO abused his authority as a trusted security representative to make an intentionally misleading security report to a redacted (8th line of the 4th paragraph in the FSO's report to DCSA) government security entity after I had started my approved vacation at the end of my workday on 29 April 2024…***

**DCSA Response**: As previously addressed in this appeal response, the evidence you highlight does not refute the MFR nor does it prove that any information is missing or being misrepresented. The attributions you place on the FSO are not supported contextually via the evidence you provide.

***(7) The FSO failed to include, anywhere in his report to DCSA, or reference communicating to the other entities mentioned in his report, that I had written an MFR, classified at the program level and left in the program safe, detailing the non-compliant actions of the SVP and how the CONOPS specifically forbid the misuse of government resources and program accesses that the SVP was attempting to do and pressure me to go along with.***

**DCSA Response**: The intention of an MFR is to provide a complete timeline of the totality of each step taken within the larger reporting requirement process. As it is intended to be a concise record, it is not and cannot be inclusive of each report, detail and process that occurred or of all records that were obtained. You have not provided any evidence, nor does the MFR itself suggest that any information was omitted, concealed or misrepresented.

***Additional Information that Conflicts with FSO's Reporting***

The arguments you have offered, and the documentation you have supplied do not prove that the information in your adjudicative file is not accurate, relevant, timely, or complete, as required by 32 CFR § 310.7 and as under 5 U.S.C § 552a(d)(2)(B)(i). The amendment procedures are not designed to allow individuals to request removal of information based solely on that individual's discretion. Courts have held that "the burden of proof is on the individual." *Mervin v. FTC*, 591 F.2d 821, 827 (D.C. Cir. 1978) (per curiam); *Thompson v. Coast Guard*, 547 F. Supp. 274, 282 (S.D. Fla. 1982). As mentioned above, the Privacy Act amendment and appeal process cannot be used to rewrite history as found in *Subh v. Department of the Army*. No. 1:10cv33 (LMB/TRJ), 2010 WL 4961613 (E.D. Va. Nov. 30, 2010). In instances where an individual disagrees with opinions expressed in their Privacy Act record, "[the] proper recourse [is] to place a concise statement in [the] records which sets forth [their] disagreement with the opinions contained therein." *Middlebrooks v. Mabus*, No. 1:11CV46, 2011 WL 4478686, at *5 (E.D. Va. Sept. 23, 2011).

You have the right under 5 USC § 552a(d)(3) of the Privacy Act and 32 CFR § 310.7(g) to file a Statement of Disagreement that states the reason(s) for disagreeing with the denial of the amendment or correction. Statements of Disagreement must be concise, must clearly identify each part of any record that is disputed, and should generally be no longer than one typed page. The Statement of Disagreement must be sent to the DCSA and will be filed or notated in the system of records, and an annotation to the record itself will indicate the existence and location of the Statement of Disagreement. If you choose to submit such a statement, please send it to:

The Defense Counterintelligence and Security Agency
FOI & Privacy Office for Investigations
1137 Branchton Road
P.O. Box 618
Boyers, Pennsylvania 16018

The Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation. You may contact OGIS in any of the following ways or refer to their website: https://www.archives.gov/ogis.

U.S. National Archives and Records Administration
Office of Government Information Services
8601 Adelphi Road - OGIS
College Park, MD 20740-6001

Phone: 202-741-5770
Toll-Free: 1-877-684-6448
Fax: 202-741-5769
Email: ogis@nara.gov

This is the DCSA's final determination with respect to your Privacy Act Amendment request. In accordance with 5 U.S.C § 552a(g)(1) and 32 CFR § 310.8, you may seek judicial review of this determination in the district court of the United States in the district (1) in which you reside; (2) in which you maintain your principal place of business; (3) where the disputed agency records are maintained; or (4) in the U.S. District Court for Washington, D.C.

Sincerely,

Charles D. Watters

Charles D. Watters
Director
Privacy, Civil Liberties and
Freedom of Information

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**COMPLAINT FOR JUDICIAL REVIEW**

ZEDAKER v. DCSA

EXHIBIT Q

Q-1 (1 page)

22 August 2026

From: John Maywood Zedaker
To: DCSA FOI & Privacy Act Office of Investigations

Subj: Statement of Disagreement with DCSA-M 26-05060 (APP26-0057)

1. The DCSA findings repeatedly (page 5 paragraph 7, pg5pa9, pg6pa5, pg6pa11, pg7pa 2, pg7pa4, pg7pa6, pg7pa10, pg8pa4) indicated that Mr. Woods role as my supervisor outside of the SAP allowed him to direct the designated SAP PM to take specific actions on the SAP, to direct SAP personnel not to comply with SAP PM directions, and to prevent and/or interfere with the SAP PM from executing his duties and responsibilities on the SAP. This is false and in direct conflict with the SAP rules and the designated SAP PM's ethical and legal responsibilities to the USAF. The requirement for a company to designate a SAP PM as the senior authority for the SAP activities, subject to legal prosecution by the USAF, specifically prohibits any other personnel, including the designated SAP PM's supervisor outside of the SAP, from usurping that authority. DCSA's findings are in conflict with this.

2. It is not in dispute that I submitted a PTO request to my supervisor, Mr. Tim Woods, and that it was approved by him prior to my initiating the PTO in full compliance with the sole SNC required PTO coordination process. By SNC's own policies, in authorizing that PTO, Mr. Woods was indicating that no additional information was required and all necessary coordination with him was complete. Yet DCSA found otherwise (pg3pa4) referencing a subsequent statement by Mr. Woods of interest in a "pre-coordination" to the coordination, which is not an SNC policy or coordination requirement, nor does it justify referring to my PTO as "uncoordinated". DCSA also refers to the initial PTO approval from Mr. Woods as being an "automated system" (pg11pa9) which is false and refuted by Mr. Woods own statements in the emails provided to DCSA.

3. The DCSA findings repeatedly justify concealment of relevant events and misleading statements by SNC in their communication to DCSA by stating that SNC was not required to be concise or all-inclusive in their reporting (pg3pa3, pg3pa5, pg3pa7, pg4pa1, pg4pa3, pg4pa4, pg4pa7, pg10pa4). However, the NISPOM specifically states that SNC was required and responsible to report all information necessary to reveal the reasons why the request to debrief was made. That requirement is not optional. DCSA findings are in conflict with this.

4. The DCSA justification for finding that there was not sufficient evidence that SNC falsely reported that I ever accessed the SCIF improperly (pg4pa1, pg8pa4) would indicate that no FSO could ever be held responsible for making such a false statement since SCIF access records are inherently held by the contractor. Evidence that I did provide showing (1) common knowledge of working frequent evenings and weekends in SCIF for over 6 months, (2) the work being done on the specific weekend they retroactively stated they were concerned about was known to my supervisor, and that (3) open/close access had been provided to allow for off hours access without additional coordination strongly indicated their claim was false. It was warranted for DCSA to request SNC provide the SCIF access records from Nov 2023 – May 2024 to back up SNC's serious claims since it was not possible for me to have those records.

JMZ